ESLING *v*. CITY NATIONAL BANK & TRUST CO. OF BATTLE
CREEK.

1. BANKS AND BANKING—JOINT ACCOUNTS—WITHDRAWALS.

Under joint savings bank deposit in name of two persons payable
to either or survivor, either may withdraw the entire amount
during the lifetime of the other with or without the pass book
representing the same (3 Comp. Laws 1929, § 12063).

2. SAME—STATUTES—JOINT ACCOUNTS—RULE OF EVIDENCE—PRE-
SUMPTION BETWEEN DEPOSITORS.

Statute providing that bank deposit in name of depositor and an-
other and payable to either or survivor should become property
of such persons as joint tenants provides a rule of evidence, but
as between depositors the form of deposit gives rise to a pre-
sumption only (3 Comp. Laws 1929, § 12063).

3. SAME—DESIGNATION OF ACCOUNTS BY DEPOSITOR.

If a depositor directs a bank to pay his deposit to himself or
another, the depositor may change the designation or limit pay-
ment to himself or his order.

4. GIFTS—INTER VIVOS—SAVINGS BANK DEPOSIT.

Designation of savings bank deposit as one subject to order of de-
positor and another *held*, not a gift *inter vivos* since it did not
strip depositor of all ownership of, and dominion over, the
deposit.

5. BANKS AND BANKING—JOINT SAVINGS DEPOSIT—REVOCATION OF
AUTHORITY TO WITHDRAW.

Joint interest created by the opening of a joint savings bank ac-
count is subject to the right of the person who opened the ac-
count to terminate and revoke the authority to withdraw (3
Comp. Laws 1929, § 12063).

6. GIFTS—REVOCATION—JOINT SAVINGS BANK DEPOSIT.

Bank in which depositor withdrew money from her own account
and opened a new account payable to either herself or grand-
daughter or survivor *held*, justified in refusing payment after
receiving notice by telephone from depositor not to pay money

to granddaughter, so long as deposit had not been otherwise disposed of, since the depositor had power to revoke the intended gift (3 Comp. Laws 1929, § 12063).

7. Banks and Banking—Joint Savings Accounts—Notice to Withhold Payment—Statutes.

Presumably written notice from either of the parties to joint savings bank deposit to the bank to withhold payment to other party would, by force of statutory provision therefor, preserve the rights of the respective parties *in statu quo* until such time as proceedings looking toward an adjudication of their rights could be instituted (3 Comp. Laws 1929, § 12063).

8. Same—Joint Savings Accounts—Written Notice to Withhold Payment.

Granddaughter of depositor *held,* not entitled to complain where bank paid deposit to grandmother who had placed it in joint savings bank account, payable to either or survivor, after depositor, upon learning of granddaughter's intention to withdraw it, telephoned bank to withhold payment and later withdrew it herself, where granddaughter never gave bank statutory written notice not to pay original depositor (3 Comp. Laws 1929, § 12063).

9. Same—Joint Savings Accounts—Stop Order—Demand for Payment.

Under joint savings bank deposit by depositor payable to herself or granddaughter or survivor, by-laws of bank and statute relative to such accounts, the demand for payment by granddaughter subsequent to stop order by depositor *held,* not to vest any greater right in the deposit in the granddaughter than she possessed prior thereto (3 Comp. Laws 1929, § 12063).

10. Same—Joint Accounts—Stop Orders—Statutes.

Statute relative to joint bank accounts protecting bank for payments made to either party prior to receipt of written stop order as to such deposit *held,* not to prevent bank from respecting oral notice from either party not to pay the other (3 Comp. Laws 1929, § 12063).

11. Evidence—Knowledge of the Law—Joint Savings Bank Accounts.

Plaintiff, designated by grandmother as joint tenant as to savings bank deposit *held,* bound to know the law relative to such accounts (3 Comp. Laws 1929, § 12063).

12. Banks and Banking—Joint Savings Accounts—Assumpsit by Survivor—Evidence.

> Testimony of bank teller that depositor said that upon her death money in joint account then opened in name of herself and granddaughter and payable to either or survivor was to go to granddaughter *held*, admissible, after death of depositor, as bearing upon rights of parties in deposit made, in granddaughter's action of assumpsit against bank, where depositor, after learning of granddaughter's intention to withdraw deposit, had given oral stop order to bank before plaintiff made demand for payment and depositor later withdrew the deposit (3 Comp. Laws 1929, §§ 12063, 14219).

Appeal from Calhoun; Hatch (Blaine W.), J. Submitted January 21, 1936. (Docket No. 94, Calendar No. 38,756.) Decided December 28, 1936.

Assumpsit by Grace Irene Esling against City National Bank & Trust Company of Battle Creek for money deposited in joint savings account. From judgment for defendant, plaintiff appeals. Affirmed.

*William J. Kearney* and *Ronald M. Ryan,* for plaintiff.

*Bernard J. Onen* (*Stuart H. Redner,* of counsel), for defendant.

North, C. J. This suit in assumpsit was tried before the court without a jury. The appeal is from a judgment entered in favor of defendant. For sometime prior to August 17, 1932, plaintiff's grandmother, Mrs. Hannah C. Lewis, had a deposit in the defendant bank. On that date plaintiff and Mrs. Lewis went to the bank and opened a joint account in their names. This was accomplished by Mrs. Lewis transferring $2,000 from her individual account to the joint account of the two. Each of them

signed a card which contained on its face the following:

## "Notice

"We certify that before signing, we read the notice on the reverse side of this card, relative to joint deposits, and we agree to the terms thereof."

On the reverse side of the card was printed:

"Notice—Where deposits are made in name of two persons, payable to either or the survivor, such deposits may be withdrawn in whole or in part, by either payee, irrespective of the source of the deposit or rights of the payee, as between themselves. In the case of death of one payee, payment may be made by the bank to the survivor.

"Payment by the bank to either payee before or after the death of the other, shall to the extent of such payment, satisfy all liability of the bank to both payees, their representatives and assigns. The bank may make such payment to one payee notwithstanding any notice, order or direction by the other payee or his legal representatives.

"These terms are applicable to both pass books and certificates and are in addition to the regular by-laws governing savings deposits."

The statute governing such deposits provides:

"When a deposit shall be made in any bank or trust company by any person in the name of such depositor or any other person, and in form to be paid to either or the survivor of them, such deposits thereupon and any additions thereto, made by either of such persons, upon the making thereof, shall become the property of such persons as joint tenants, and the same together with all interest thereon, shall be held for the exclusive use of the persons so named and may be paid to either during the lifetime of both, or to the survivor after the death of one of them, and

such payment and the receipt or acquittance of the same to whom such payment is made shall be a valid and sufficient release and discharge to said bank for all payments made on account of such deposits *prior to the receipt by said bank of notice in writing not to pay such deposit in accordance with the terms thereof."*  3 Comp. Laws 1929, § 12063.

On November 10, 1932, Mrs. Lewis was informed by plaintiff, who had possession of the bank book, that she was going to withdraw the money from the bank.  Mrs. Lewis protested against such withdrawal, and while plaintiff was on her way to the bank Mrs. Lewis, through another, telephoned the bank and stopped payment.  This stop order was noted on the account.  When plaintiff arrived at the bank and presented the book and demanded payment of the deposit she was informed of Mrs. Lewis' stop order and payment was refused.  Plaintiff testified:

"The teller said, 'When there is a controversy between the two parties, we will have to have it ironed out between the parties.'  I said, 'All right,' and went to my home.  That is the last time I talked with anyone about the transaction until I talked with Mr. Green (the president of the bank) quite a while afterward."

Later the same day Mrs. Lewis came to the bank. While there she served written notice on the bank to pay no funds from this account except on her written order.  Thereupon the funds from this joint account, amounting to $2,020, were withdrawn by Mrs. Lewis and redeposited in an account standing in her individual name.  Some time later these and other funds which Mrs. Lewis had on deposit in the defendant bank were transferred by her to accounts in the names of other relatives.  At the time suit was

started, October 30, 1933, Mrs. Lewis was living; but her death occurred before trial in the circuit court.

Plaintiff's theory is that she is entitled to recover from the bank because it had no right to pay the deposit to Mrs. Lewis (who did not then have possession of the bank book) after plaintiff had made demand of payment as above recited. In this connection plaintiff asserts that the bank was not justified in refusing payment to her upon presentation of the pass book, notwithstanding the previous telephone stop order by Mrs. Lewis.

It is important to note that the bank teller through whom the joint account was made testified that at the time of the deposit Mrs. Lewis said that the money was to go to her granddaughter after Mrs. Lewis' death. This was denied by plaintiff. However, the testimony discloses facts which tend to negative an intent on the part of Mrs. Lewis that by opening an account in the joint names of herself and her granddaughter she was to release her right to, and control of, the money deposited. She was well advanced in years, enfeebled in health, and it was fair to assume that her necessities might require the use of this deposit in whole or in part. Obviously with this in mind Mrs. Lewis reserved the right to withdraw from this account. The undisputed testimony is that the money placed in this joint account belonged to Mrs. Lewis and the bank was aware of such being the fact. And further, both by plaintiff's own statement and by the order to stop, the bank knew Mrs. Lewis was opposed to payment being made to plaintiff. But assuming plaintiff, as well as Mrs. Lewis, could make withdrawals, the rights of plaintiff in this joint deposit during the lifetime of Mrs. Lewis are, under the facts of this case, rather definitely

settled by former decisions of this court as well as those of other jurisdictions:

"Under the form of the deposit, with or without the pass book representing the same, either could have withdrawn the entire amount during the lifetime of the other." *Negaunee National Bank* v. *Le-Beau,* 195 Mich. 502 (L. R. A. 1917 D, 852).

"I think it may be a matter of common knowledge that many of them (married people) have their savings deposited in banks payable to them or either of them or the survivor of them, or words of similar purport. The legislature of the State has taken cognizance of this fact *and has provided a rule of evidence in such cases.* 2 Comp. Laws 1915, § 8040 (being 3 Comp. Laws 1929, § 12063). But it has gone no farther." *Ludwig* v. *Bruner,* 203 Mich. 556.

In construing the provisions of the New York statute which, as to the rights of joint depositors while both are living, is strikingly similar in its terms to the Michigan statute, Justice Cardozo in an exceedingly well-reasoned opinion states:

"The statute, as I view it, does not mean that between the persons named as depositors a joint tenancy ensues at once and automatically, as an irrebuttable presumption, with the result that neither will be permitted even during the joint lives to prove against the other that the deposit was made with a contrary intention. For the bank which has paid, the form of the account is, indeed, an absolute protection, unless written notice has been given by either one of the depositors (cf. Banking Law, §§ 148, 198) 'not to pay such deposit in accordance with the terms thereof.' For the depositors themselves, the form is not conclusive in any contest during their joint lives as to the title to the moneys, nor conclusive after the death of either as to moneys then withdrawn. * * *

"The plain implication is that as between the depositors themselves, the form of the deposit gives rise to a presumption and nothing more.  *  *  *

"It (the bank) is protected in the absence of written notice that it is 'not to pay such deposit in accordance with the terms thereof.' When such a notice is given and a contest in the courts ensues during the joint lives of the depositors, distribution is to be determined, not solely by the terms of the deposit, which then cease to be conclusive, but by the realities of ownership." *Moskowitz* v. *Marrow,* 251 N. Y. 380, 396 (167 N. E. 506, 66 A. L. R. 870).

In a recent decision in this court it is held that the act of a woman who had created a similar joint account in the name of herself and a nephew might later of her own motion have the nephew's name stricken from the bank records, thus leaving it an account in her individual name. In speaking of the respective rights of this woman and her nephew, Justice WIEST said:

"It is clear that Mrs. Currey felt very friendly toward Mr. Rasey, who was her nephew, and intended at one time to make him a gift to take effect at the time of her death, but she was shrewd enough to not place her means beyond her control, and later she expressly withdrew the prospective gift. The money was all deposited by Mrs. Currey. Here was no gift, by way of absolute transfer, or to take immediate effect, but, at the inception of the arrangement and in its very designation of terms, was contingent upon survivorship of John Rasey. It was not irrevocable.  *  *  *  If a depositor directs a bank to pay the deposit to the depositor, or another designated, the depositor may change the designation or limit payment to himself or his order. The designation of the bank account as one subject to the order of Mrs. Currey or Mr. Rasey did not constitute a gift *inter vivos,* for it did not strip Mrs. Currey of

all ownership of and dominion over the deposit.''
*Rasey* v. *Currey's Estate,* 265 Mich. 597.

''The joint interest created by the opening of such
an account was always subject to the right of the
person who opened the account to terminate and re-
voke the authority to withdraw.'' *Cleveland Trust
Co.* v. *Scobie,* 114 Ohio St. 241 (151 N. E. 373, 48 A.
L. R. 182).

Under the circumstances disclosed by the record
in the instant case, we are of the opinion that Mrs.
Lewis had the right, so long as the deposit had not
otherwise been disposed of, to revoke the intended
gift. If she had the power to revoke the gift, certain-
ly the bank upon being duly notified was fully justi-
fied in refusing payment to plaintiff.

The bank would have been confronted with a dif-
ferent situation if plaintiff had exercised the right
which the above quoted statute affords by serving
the bank with ''notice in writing not to pay such
deposit'' to Mrs. Lewis or upon her order. Pre-
sumably such notice by force of the statutory pro-
vision would have preserved the rights of the
respective parties *in statu quo* until such time as
proceedings could have been instituted looking to-
ward an adjudication of the rights of the parties
interested. Plaintiff did not see fit to protect her
rights in accordance with the statutory provision;
and not having done so, she is without just ground
for complaint because of the bank having made pay-
ment to Mrs. Lewis. Under the circumstances of
this case, plaintiff's demand for payment subsequent
to Mrs. Lewis' stop order given to the bank did not
vest in plaintiff any greater right in the deposit than
she possessed prior to such demand. The money
belonged to Mrs. Lewis; it was paid to her by the
bank; and by express statutory provision such pay-

ment constituted a "release and discharge to said bank for all payments made on account of such deposits prior to the receipt by said bank of notice in writing not to pay such deposit in accordance with the terms thereof."

Decision herein can be, and we think should be, based upon the statutory provision governing payments of accounts of this character. Appellant points out that there is conflict between the terms of the deposit agreement and the quoted statute. The conflict referred to by appellant is that the deposit agreement authorizes the bank to make payment "notwithstanding *any* notice," where as the statute provides for notice in writing. Appellant asserts that the statutory provision should control, citing *Ackenhausen* v. *People's Savings Bank*, 110 Mich. 175 (33 L. R. A. 408, 64 Am. St. Rep. 338). But even so, under the facts in this case decision would not thereby be changed. While the statute provides for stopping payment by notice in writing; there is no provision in the statute which prevents the bank, if it sees fit to do so, from respecting an oral notice from one of the parties not to pay the other.

Appellant asserts that she should not be bound by the terms of the depository agreement because she signed the same without reading it or being otherwise advised of its contents. But regardless of whether appellant is bound by the terms of the depository agreement, she is bound by the provisions of the statute hereinbefore quoted. She is bound to know the law.

Appellant also asserts that the trial court committed error by permitting the bank teller to testify to matters equally within the knowledge of Mrs. Lewis, who had died prior to trial of the cause.*

---

* See 3 Comp. Laws 1929, § 14219.—Reporter.

This contention is not tenable. The record does not show that this specific objection was made in the trial court. The teller testified: "Mrs. Lewis said that the money was to go to her granddaughter after her death." This statement was made in plaintiff's presence, if made at all; and the testimony was admissible as bearing upon the rights of the respective parties in the deposit then being made. *In re Taylor's Estate,* 213 Mich. 497.

The judgment entered in the circuit court is affirmed, with costs to appellee.

FEAD, WIEST, BUTZEL, BUSHNELL and SHARPE, JJ., concurred with NORTH, C. J.

POTTER, J. (*concurring in result*). Plaintiff brought suit against defendant to recover $2,000 and interest. There was judgment for defendant and plaintiff appeals.

The facts are not in dispute. Plaintiff was either entitled to judgment for the full amount of her claim or she was entitled to nothing. A new trial in case of reversal is unnecessary. The disposition of the case depends upon a question of law. If there was error in the admission of testimony, it was error against plaintiff and in favor of defendant. We do not find it necessary to pass upon that question to dispose of the case.

Plaintiff and Hannah C. Lewis had a joint deposit in the sum of $2,000 in defendant bank. When the money was deposited, both plaintiff and Hannah C. Lewis, the joint party to the deposit, signed a signature card for the bank. This signature card contained a notice on the face thereof as follows:

"We certify that before signing, we read the notice on the reverse side of this card, relative to joint deposits, and we agree to the terms thereof,"

and on the reverse side was printed the following:

"NOTICE—Where deposits are made in name of two persons, payable to either or the survivor, such deposits may be withdrawn in whole or in part, by either payee, irrespective of the source of the deposit or rights of the payee, as between themselves. In the case of death of one payee, payment may be made by the bank to the survivor.

"Payment by the bank to either payee, before or after the death of the other, shall to the extent of such payment satisfy all liability of the bank to both payees, their representatives and assigns. The bank may make such payment to one payee notwithstanding any notice, order or direction by the other payee or his legal representatives.

"These terms are applicable to both pass books and certificates and are in addition to the regular by-laws governing savings deposits."

After the signing of the signature card and the deposit of the money, a pass book was issued which contained the following:

"Book No. 32565

"HANNAH C. LEWIS.

"MRS. GLADYS IRENE ESLING.

"Payable to either or survivor.

"In account with the City National Bank & Trust Company of Battle Creek.

"Money cannot be drawn without presenting pass book.

| "Date | Initials | Deposits | |
|---|---|---|---|
| "Aug. 17, '32 | C | 2,000 | |
| | | Withdrawals | Balance |
| | | Int. as of | 2,000" |
| | | 7-1-32 | |

The pass book was delivered to the plaintiff who subsequently desired to draw the money from the bank. She talked with Mrs. Lewis about it and then went to the bank and presented the pass book and

sought to draw the money. Defendant refused to permit the withdrawal of the money or to pay it to plaintiff. Mrs. Lewis had caused the bank to be notified by telephone, after plaintiff had left home to go to the bank to draw the money, that the pass book was lost. On the same day, Mrs. Lewis went to the bank whereupon the bank prepared the following papers which were introduced as exhibits:

"EXHIBIT A.

"O K

"C. C. G.

"Pass Book Must Be Presented With This Receipt.                    Book No. 32565.

"New balance ..........

"Received of the City National Bank & Trust Company Two thousand twenty dollars $2,020.

"Which amount charge to my account.

"Name—HANNAH C. LEWIS

"Present address ..........

"Book Lost.

"Witness:

"T. J. COLEMAN."

"EXHIBIT B.

"THE CITY NATIONAL BANK & TRUST CO.,
"Battle Creek, Michigan.
"November 10, 1932.

"CITY NATIONAL BANK & TRUST CO.,

"Battle Creek, Michigan.

"*Gentlemen:*

"You are hereby notified that the savings pass book on the joint account No. 32565 standing in the name of Hannah C. Lewis and Mrs. Gladys Irene Esling is lost.

"Yours very truly,
(Signed) "HANNAH C. LEWIS.
"HANNAH C. LEWIS.

"Witness:

"T. J. COLEMAN."

"Exhibit C.

"The City National Bank & Trust Co.,
      "Battle Creek, Michigan.
            "November 10, 1932.
"City National Bank & Trust Co.,
"Battle Creek, Michigan.
"*Gentlemen:*
      "You are hereby notified to pay no funds on
the joint account No. 32565 standing on your books
in the name of Hannah C. Lewis and Mrs. Gladys
Irene Esling, except on my written consent.
                  "Yours very truly,
                  (Signed) "Hannah Lewis.
                        "Hannah C. Lewis.
"ILW
"Witness:
"T. J. Coleman."

It is conceded that at the time of the execution
of these papers the bank knew of the presentation
of the pass book by plaintiff, that it was not lost but
was in the possession of plaintiff. Mrs. Lewis was
permitted to draw and keep the money to the exclu-
sion of plaintiff.

The question is, Was plaintiff entitled to the
money upon presentation of the pass book? Was
plaintiff entitled to judgment?

Plaintiff was entitled to judgment if Act No. 248,
§ 3, Pub. Acts 1909 (3 Comp. Laws 1929, § 12063) is
valid. *In re Taylor's Estate,* 213 Mich. 497; *Murphy*
v. *Michigan Trust Co.,* 221 Mich. 243.

It may be contended the validity of Act No. 248,
§ 3, Pub. Acts 1909 (3 Comp. Laws 1929, § 12063)
was passed upon in *Re Rehfeld's Estate,* 198 Mich.
249; *Powell* v. *Pennock,* 198 Mich. 573; *People's
State Bank of Holland* v. *Miller's Estate,* 198 Mich.
783; and later cases. In the first of these cases,

Mr. Justice Fellows, with whom concurred Mr. Justice Moore, in a dissenting opinion, discussed the constitutionality of the act. The majority opinion did not discuss it, but ignored it, relying upon *Clary* v. *Fitzgerald,* 155 App. Div. 659 (140 N. Y. Supp. 536). The majority opinion says: "The identical question here at issue was considered." This statement is not true. The question of the constitutionality of the New York act was not before the court in *Clary* v. *Fitzgerald,* and the opinion in that case makes no mention of such a question. The question of the constitutionality of the New York act on the ground raised by Mr. Justice Fellows in *Re Rehfeld's Estate, supra,* could not arise. (a) There is no provision in the Constitution of the State of New York prohibiting any general legislative act which might be passed from embracing as many subjects or objects as the legislature in its discretion might desire to embody therein. (b) The only provision in the Constitution of the State of New York in any wise analogous to that found in the Constitution of Michigan is that "No private or local bill, which may be passed by the Legislature, shall embrace more than one subject, and that shall be expressed in the title." New York Const. (1894), art. 3, § 16. (c) There is no provision in the Constitution of the State of New York applicable to public acts requiring that no law shall embrace more than one object, which shall be expressed in the title,—as is found in the Constitution of the State of Michigan. Const. 1908, art. 5, § 21.

Ignoring a question does not settle it. Alleging the identical question was considered when it could not be considered does not settle it.

But for Act No. 248, Pub. Acts 1909, the title to the property in question would be vested in the true

owners thereof, regardless of whether it was deposited in the name of one or both the parties.

Act No. 248, Pub. Acts 1909, was passed for the protection of banks. There is nothing in the title that purports to change an established rule of property. The title to the act is:

"An act *in relation to the payment of deposits* of money in banks and trust companies by minors, trust deposits, and deposits in the names of more than one person."

The Constitution provides:

"No law shall embrace more than one object, which shall be expressed in its title." Const. 1908, art. 5, § 21.

What has the payment of bank deposits to do with the rights of the parties to such deposit as between themselves? The only answer is,—nothing. Should the legislature be permitted to insert in a statute a provision changing an established rule of property when the title thereto gives no intimation that such was intended? Clearly, it should not, if the constitutional provision above quoted is to be given any effect. This provision in the Constitution of 1908 is identical with the provision of the Constitution of 1850, art. 4, § 20, and its language has been frequently construed. The purpose of the provision was to prevent the insertion of clauses in bills of which the titles gave no intimation. *People* v. *Collins,* 3 Mich. 343; *People, ex rel. Drake,* v. *Mahaney,* 13 Mich. 481; *Kurtz* v. *People,* 33 Mich. 279; *Hume,* v. *Village of Fruitport,* 242 Mich. 698; and other cases.

The Constitution requires that the titles to legislative acts shall be truthful indexes to legislation, *Wardle* v. *Cummings,* 86 Mich. 395; and the title to

an act usually determines, defines and controls its scope, *McKellar* v. *City of Detroit,* 57 Mich. 158 (58 Am. Rep. 357); *Booth* v. *Eddy,* 38 Mich. 245; *Bates* v. *Nelson,* 49 Mich. 459. The legislature cannot use one title and explain in the body of the act it means something else. *Northwestern Manfg. Co.* v. *Wayne Circuit Judge,* 58 Mich. 381 (55 Am. Rep. 693). Anyone has a right to look to the title of the act to determine the purpose or object thereof. *Sackrider* v. *Saginaw Board of Supervisors,* 79 Mich. 59; *Attorney General* v. *Detroit & Saline Plank Road Co.,* 97 Mich. 589.

The title to this act does not warrant the insertion therein of the language:

"Upon the making thereof, shall become the property of such persons as joint tenants."

It seems self-evident from an examination of the title to the act in question, there is nothing therein to give anyone any notice it was intended to change an established rule of property. The act is unconstitutional in so far as it attempts to change such rule of property. So far as it purports to protect banks, it is valid and binding and within the title thereof and of the decision of the New York court quoted in *Re Rehfeld's Estate, supra.* Plaintiff's rights against defendant are sought to be based upon a statute which is unconstitutional in the particular involved.

For the reasons above stated, judgment is affirmed, but without costs.

Toy, J., concurred with Potter, J.