EDWARD WOODWARD *v.* SAM H. AUYONG, ADMINISTRATOR OF THE ESTATE OF FLORA E. WRIGHT, ALSO KNOWN AS FLORA E. WOODWARD, DECEASED, AND WORTH O. AIKEN, DEPUTY TREASURER IN CHARGE OF THE LIQUIDATION OF CHINESE AMERICAN BANK.

No. 2347.

ARGUED APRIL 27, 1938.                    DECIDED JULY 1, 1938.

COKE, C. J., PETERS, J.

OPINION OF THE COURT BY PETERS, J.

This is an action brought by Edward Woodward against Sam H. Auyong, administrator of the estate of Flora E. Wright, otherwise known as Flora E. Woodward, deceased, to recover the sum of $1739 which had been upon ordinary commercial deposit in the Chinese American Bank to the credit of "Mrs. Flora E. Woodward and/or Edward Woodward" but had been withdrawn by the deceased intestate

prior to her death and deposited by her to her individual account in the same bank. Subsequently, by amendment, Worth O. Aiken, Esq., the deputy territorial treasurer in charge of the liquidation of the bank, appeared and the action proceeded against both defendants in their representative capacities.

Upon the trial below the plaintiff had a verdict and the administrator prosecuted exceptions. The parties to the appeal will hereafter be referred to as "appellant" and "appellee" respectively. By stipulation between appellant and appellee, the cause was submitted to the two remaining justices of the court before whom the cause was argued. The only exception that may be noticed is that to the verdict as being contrary to the evidence.

It is undisputed that on May 18, 1932, appellee and the deceased intestate, both of whom were gainfully employed and who were and had been for about sixteen years living together informally as husband and wife, mutually agreed to pool their earnings, with the right of survivorship in the common fund thereby created and as thereafter increased by mutual contribution thereto, and for that purpose established the bank account in question; that the initial deposit ($173.96) was made by the deceased but subsequent deposits were made indiscriminately by both, those of the appellee, consistently with his salary, being the larger; that prior to the creation of the account in question the right of either to make withdrawals therefrom during their joint lives was not discussed between the parties, but after the creation of the account and between that time and July 24, 1933, when the deceased made the withdrawal complained of, each with the knowledge and consent of the other withdrew small amounts necessary for their personal needs; that the expenses of the household were borne by the appellee and the withdrawals made by him for that purpose were larger and more frequent; that on July 24, 1933, all

the money to the credit of the account in question, with the exception of a few cents, was withdrawn by the deceased and redeposited by her in the same bank in her individual account; that the withdrawal so made by the deceased was without the knowledge or consent of the appellee and was apparently made in retaliation of some real or fancied wrong done her by him.

This evidence is amply sufficient to sustain a finding that on or about May 18, 1932, by the agreement between the parties themselves and the contract between them and the bank, they thereupon became joint owners of the deposit in question as it then existed or as thereafter increased by mutual contribution thereto, with the right of survivorship, qualified by the limitation that neither of the parties during their joint lives might make withdrawals from said deposit without the consent of the other and that the withdrawal made by the deceased intestate on July 24, 1933, was in derogation of the rights of the appellee and constituted *pro tanto* a conversion of said deposit.

The appellant contends that the rights of the codepositors in the deposit in question are governed by the provisions of section 6586, R. L. 1935, quoted in the margin,[1] and that when withdrawn on July 24, 1933, the amount of the withdrawal became immediately vested in the deceased

---

[1] "Sec. 6586. Joint deposits. When a deposit with a bank shall be made by any person in the names of the depositor and another person, or persons, and in form to be paid to either, or the survivor or survivors, of them, deposits thereupon and any additions thereto made by either, or any, of such persons, shall, upon the making thereof, become the property of such persons, as joint tenants, and such deposit and deposits, together with all interest thereon, shall be held for the exclusive use of the persons so named, and may be paid to either, or any, of such persons, during the lifetime of all or any, or to the survivor, or survivors, after the death of one or more of them; and such payments, and the receipts or acquittances of the one to whom the payments are made, shall be a valid and sufficient release and discharge to the bank for all payments so made on account thereof."

intestate as her separate property. Assuming that the contract as between the codepositors themselves was the same in legal effect as the contract of the codepositors and the bank, this might be so. The statute, however, is the measure of the reciprocal rights, duties and obligations of the respective parties to the bank deposit and not of those of the codepositors between themselves. Where an account is opened in the form prescribed by the statute, in the absence of evidence to the contrary, the presumption immediately arises that the interests of the codepositors are those of joint tenants. Where it appears, however, that the rights of the codepositors have been otherwise limited or modified as between themselves, the terms of the deposit as to the rights of the codepositors between themselves become merely evidentiary. (*Esling* v. *City Nat. Bank & Trust Co.*, 278 Mich. 571, 270 N. W. 791.) The presumption created by the statute is not conclusive. (*Moskowitz* v. *Marrow*, 251 N. Y. 380, 387, 167 N. E. 506; *Marrow* v. *Moskowitz*, 255 N. Y. 219, 174 N. E. 460; *In Re Southard's Estate*, 270 N. Y. S. 85, 86; *In Re Leakes' Estate*, 296 N. Y. S. 720, 721; *In Re McCarthy's Estate*, 299 N. Y. S. 715, 721.)

The terms of the contract by which the common fund was created are plain and unambiguous and, to the extent in respect to withdrawals that they limit the interest of the parties thereto, must be given effect, despite any inconsistency that may exist between them and the right of withdrawal accorded by the terms of the deposit and expressly sanctioned by the statute. As between the bank and the codepositors the deposit was held by the former for the exclusive use of the latter and could be legally paid by the bank to either of them during their joint lives and such payments so made would constitute a valid and sufficient release and discharge to the bank for all payments so made on account of said deposit. But as between the parties themselves any withdrawal without the consent of the other

constituted a breach of the terms of the contract entered into between them and a conversion *pro tanto* of the common fund on deposit with the bank. (*O'Connor* v. *Dunnigan,* 143 N. Y. S. 373, 374.)

In the instant case, differently from many of the cases involving joint bank accounts, the issues of law as between the codepositors depend for their solution upon the terms of a simple contract entered into by parties *sui juris* and supported by a valuable consideration. No confusion is interjected by the presence of the relations of principal and agent, of donor and donee, or of trustee and *cestui que* trust. The form of deposit employed is one in common use and has assumed an importance in the lives of persons of moderate means consistent with its flexibility during the joint lives of the owners and its immediate availability in the event of death without delay or expense. The statutory definition of the rights of the parties to such an account serves to remove the many doubts that before its enactment existed as to the rights of depositors in such an account. But no legal impediment exists to codepositors *inter se* qualifying or limiting the legal incidents of such an account. And where, as here, the codepositors between themselves qualify and limit their respective interests in the deposit, the qualification and limitation thus imposed and not the terms of the statute control. Appellee as the survivor was entitled to recover the amount wrongfully withdrawn from the bank by the deceased on July 24, 1933.

Consistently with the foregoing opinion, the exception to the verdict is overruled.

*E. J. Botts* (also on the brief) for plaintiff.

*J. V. Esposito* (S. Landau on the briefs) for defendant.