LAVALLEY v. PERE MARQUETTE EMPLOYES' CREDIT UNION.

1. BANKS AND BANKING—JOINT ACCOUNT—PAYMENT TO JOINT OWNER.

Generally, the payment to one of the joint owners of a joint bank account discharges the payor's obligations (CL 1948, § 487.703).

2. SAME—STATUTES—JOINT ACCOUNT—CREDIT UNIONS.

The statute providing that payment to 1 of the 2 joint owners of a joint account discharges the payor's obligations applies to credit unions, since they are authorized to receive deposits, make loans and borrow money and are under the supervision of the commissioner of banking (CL 1948, §§ 487.703, 490.1, 490.6).

REFERENCES FOR POINTS IN HEADNOTES

[1] 7 Am Jur, Banks § 528.
[3] 7 Am Jur, Banks §§ 614–616.
[5] 7 Am Jur, Banks § 509.
[6] 39 Am Jur, Parties § 25.
[8] See, generally, 7 Am Jur, Banks § 589 *et seq.*

3. SAME—JOINT ACCOUNT—CREDIT UNIONS—PRESENTATION OF PASS-
BOOK.

Whether or not payment by the payor credit union to 1 of the
2 joint owners of a joint account discharged payor's obliga-
tion when it made such payment to one joint owner, mas-
querading as the other, is not decided, where decision is
based on payor's violation of its contract with respect to
such withdrawals in that passbook was not presented (CL
1948, § 487.703).

4. SAME—JOINT ACCOUNT—WAIVER—CONTRACTS.

One joint owner of a joint bank account may not waive for the
other a contractual obligation running to each and for the
benefit of both (CL 1948, § 487.703).

5. SAME—JOINT ACCOUNT—FORGERY—PRESENTATION OF PASSBOOK.

Credit union with which plaintiff made deposits in account,
running to himself and son as joint owners, was liable to
plaintiff for sums paid to son who had forged withdrawal
slips and indorsements on checks made payable to plaintiff,
where payments were made to the son without presentation
of passbook as required by the written contract of deposit
(CL 1948, §§ 487.703, 490.1).

6. PARTIES—ACTION TO ENFORCE JOINT OBLIGATION.

Generally, it is necessary to join all joint obligees in an action
at law to enforce the obligation of an obligor to 2 or more
persons jointly, in order not to subject the obligor to harass-
ment by more than 1 action.

7. BANKS AND BANKING—CREDIT UNION—JOINT ACCOUNT—JOINT
AND SEVERAL LIABILITY OF PAYOR.

The fact that an account with a credit union is a joint and
survivor account does not preclude its being, concomitantly,
several obligations to the joint obligees thereunder (CL 1948,
§§ 487.703, 490.1).

8. SAME—CREDIT UNION—JOINT ACCOUNT—FORGERY—PRESENTATION
OF PASSBOOK—SEVERAL LIABILITY OF DEFENDANT.

Plaintiff, who had made all of the deposits in an account with
defendant credit union, standing in the name of himself and
son, jointly and with right of survivorship, was entitled
to sue defendant without joining the son, for payments made
by the defendant to the son on forged withdrawal slips and
forged indorsements of checks, where defendant had made
such payments to the son without the passbook having been
presented as required by the written contract relative to

the account and the bylaws of the credit union, since the obligation was several as well as joint (CL 1948, §§ 487.703, 490.1).

Appeal from Muskegon; Fox (Noel P.), J. Submitted April 6, 1955. (Docket No. 27, Calendar No. 46,410.) Decided June 6, 1955. Rehearing denied October 3, 1955.

Assumpsit by Clinton LaValley against Pere Marquette Employes' Credit Union, a Michigan corporation, for money deposited by plaintiff and paid by defendant to joint owner of the account posing as plaintiff without presentation of passbook. Directed verdict and judgment for defendant. Plaintiff appeals. Reversed and remanded.

*Stribley & Rude,* for plaintiff.

*John F. Langs* and *Lloyd H. Cully* (*Richard F. Molyneaux,* of counsel), for defendant.

Smith, J. The plaintiff and appellant was an employee of the Pere Marquette Railroad Company. The defendant is the Pere Marquette Employes' Credit Union. The action is assumpsit, brought by plaintiff to recover his savings of many years. They had been deposited with defendant and disbursed by defendant to another without, plaintiff contends, his knowledge or consent.

Several years after the opening of the account, and in the year 1947, plaintiff Clinton LaValley changed it to a joint and survivor account with his son, Richard, both signing the instruments required. Plaintiff's motive in so doing had to do with life insurance benefits from the account. It is clear from the record that the son, Richard, at no time made any deposits in the account. They were solely those of plaintiff, made in amounts ranging from

$1 on up. By the year 1951 there was $2,750 in the account.

At this juncture occurred the incidents giving rise to this action. Withdrawal slips purportedly executed by the father, plaintiff herein, were presented to the defendant which thereupon issued checks payable to the father. These were cashed, for the most part, in various bars and taverns. The fund so long in the building was thus dissipated in a matter of weeks. All payments (which included, in addition, certain payments in cash) had in fact been made to the son, Richard, according to the information given plaintiff by defendant's treasurer. The signatures on the withdrawal slips and the indorsements on the checks were forgeries. Plaintiff was ignorant of the withdrawals and did not discover his misfortune until, being of the age of 60 or thereabouts, he sought to make a down payment on a farm. He testified:

"I had made a deal for a farm at North Muskegon, and I relied a whole lot, I tell you, upon the money I had in the Credit Union."

He was then informed of his loss. Richard's whereabouts were unknown. This action against the defendant Credit Union followed.

Defendant asserts that the action must fail for 2 reasons: First, that the recipient of the money was in truth the other joint owner of the account and, second, because such recipient was not (as joint obligee) joined in the action. The trial court granted defendant's motion to direct verdict upon these grounds and the case is here on a general appeal from the judgment entered thereon.

The matter of the mechanics of the deception will not long detain us. It is argued that payment to one of the co-owners of a joint account discharges the payor's obligation. It is so provided by statute

(CL 1948, § 487.703 [Stat Ann 1943 Rev § 23.303])
and we reject plaintiff's argument that the statute
does not apply to defendant Credit Union. Such a
union, with statutory sanction, has the right to re-
ceive deposits, make loans, and borrow money. (CL
1948, § 490.1 *et seq.* [Stat Ann 1943 Rev § 23.481 *et
seq.*].) Its activities come under the supervision of
the commissioner of banking. For the purpose of
receiving, safeguarding, and disbursing moneys in-
trusted to it the functions of such an institution so
closely parallel those of a bank that we have no
hesitation in holding that it is a "banking institu-
tion" within the intendment of the legislature as ex-
pressed in the statute above noted.

But is the statute, so interpreted, of assistance
to defendant as respects the obligation to the
father? Defendant here urges that all payments
made to Richard were made to the other joint owner
of the account and thus discharged defendant's ob-
ligations. We may be permitted some doubts. The
conclusion upon these facts is not so obvious. In-
sofar as payments were made upon Clinton LaVal-
ley's purported authorization, the defendant made
such payments without authorization in fact. It did
not have Clinton LaValley's authorization, nor did
it make payment to him. While it is true that a
banking institution may, under proper conditions,
make payment of a joint account to one of the joint
owners in complete discharge of its obligations, the
payment in such case is made to the joint owner
qua joint owner. In this case defendant paid out
funds by checks payable to "Clinton LaValley," in
response to withdrawal slips so signed. It is, to
say the least, arguable that this was not payment
to Richard in his capacity as joint owner but rather
payment to Richard impersonating his father, Clin-
ton LaValley. So the pleadings assert and so the

testimony construed most favorably to plaintiff indicates. In this view of the transactions, it would seem that even that modest degree of prudence required of and vouchsafed to the hypothetical reasonable man would have suggested a masquerade, a son passing himself off as his father, nearing retirement. We need not, however, resolve this conflict between the objective and the subjective, for the case tips on another fulcrum, the contractual obligations of the defendant. What was the contract between the parties?

The written instruments involved are clear and unequivocal. Both father and son, at the time the account was made joint, made "application for membership in and (agreed) to conform to the bylaws or any amendments thereof in the Pere Marquette Employes' Credit Union." It was thereupon "agreed and understood" that they were to be joint tenants in the account, that "the shares and deposits covered by this account shall be owned by the undersigned as joint tenants with right of survivorship and not as tenants in common. We elect to have coverage under the life savings plan on Clinton LaValley." The signatures of both father and son appear hereunder.

The above-mentioned bylaws contain detailed provisions as to the functions of the passbook. Article 5 provides that money paid in shall be evidenced by such a book; that every entry therein shall be initialed by the person "receiving or paying out the money;" that no money shall be received from or paid to a member (loans excepted) "unless the passbook is presented for the proper entry to be made therein." It is significant that the matter of discharge of the credit union was explicitly covered in the bylaws and framed in terms of, and with reference to, the passbook. "In all cases," reads section 2 of article 5 of the bylaws, "a payment upon

presentation of a passbook shall be a discharge to the corporation for the amount so paid." Finally, and necessarily in view of the above, provision was made for the issuance of duplicate books in event of loss or theft thereof, with provision for adjustment of rights with respect thereto.

There can be no doubt upon the record that appellant relied upon these provisions. He so testified and his testimony is substantiated by his act of renting a safe-deposit box for the keeping of the book. He testified: "Every time I wanted to deposit, I'd get the book, and then put it back for safekeeping." He rested secure in his belief that with the passbook locked in his safe-deposit box his money was safe, joint tenant or not, simply because "you have to present that (passbook), if you don't present that you can't get the money."

The defendant having thus assured plaintiff that his money could not be withdrawn unless the passbook was presented, and the passbook not having been presented, upon what possible theory can payment by defendant be justified? It argues that the case of *Esling* v. *City National Bank & Trust Co. of Battle Creek*, 278 Mich 571, is authority for the proposition that payment to one of the co-owners of the joint account without presentation of the passbook is a complete discharge of its obligations with respect to the fund in question. The *Esling Case* is not so broad. In the *Esling Case*, we held merely that an "intended gift" in the form of a joint account might be revoked by the donor as long as control over the deposit had not been relinquished by her. Upon such facts it is obvious that the donee's possession of the passbook was merely a detail of the gift mechanism, which in its entirety was revocable during the donor's lifetime.

We should add that we have given consideration, also, to the proposition that a depositor and a bank-

ing institution may expressly or impliedly waive a provision requiring the production of a passbook. It must be observed, however, that in the case at bar we are not dealing simply with 1 obligee and his bank. These 2 parties may, of course, contract as they see fit. We are dealing with 3 persons. In such a situation, absent proof of agency, one party cannot "waive," for the other, a contractual provision running to each and of equal benefit to both. The matter was squarely ruled upon in the case of *Davis* v. *Chittenden County Trust Co.,* 115 Vt 349, 350 (61 A2d 553), which, like the case at bar, was an action "in general assumpsit (by which) the plaintiff, a co-owner of a joint savings account in defendant bank, seeks to recover for the alleged wrongful payment of the balance thereof to the other co-owner without presentation of the bank passbook or proof of its loss or destruction as required by the rules of the bank." In holding for the plaintiff the court concluded with these words (p 354):

"We hold that the rules printed in the passbook became part of the contract of deposit; that such rules were for the benefit of the depositor or depositors as well as of the bank and they could not be waived by the bank alone. The result is not affected by the fact that this was a joint account and that the person who withdrew the money was one of the depositors. Each of the depositors was a party to the contract and the rule requiring production of the passbook could be waived only by the bank in concurrence with both of them."

A like conclusion was reached in the case of *Mercantile Savings Bank* v. *Appler,* 151 Md 571, 575 (135 A 373), in which the court, in holding for a defrauded co-owner in an analogous situation, spoke as follows:

"The question at issue was not whether the bank 'used reasonable care and prudence' in disbursing the money, but whether it lived up to its contract obligations with the appellee. According to the rules and bylaws printed in the passbook, no money could be either deposited or withdrawn unless the passbook was presented, and according to these same rules and bylaws this provision was made part of the contract between the bank and the depositor, and the latter's acceptance of the book was made evidence of his consent to the terms of the contract. And it was further provided that the bank could pay the money out to anyone who presented the passbook, whether that person was the actual depositor or owner or not. This clearly established a contract between the bank and the depositor, and when the bank undertook to change the terms of this contract we think it did so at its own risk. When the appellee, accompanied by her husband, made her original deposit and received the passbook, she certainly had a right to rely on the express written terms which she found in the book."

The pleading point remains. It is the defendant's contention that the son, Richard, must be joined in the action, quoting 1 Callaghan's Michigan Pleading and Practice, § 15.27, as follows:

"It is a rule of general application that actions on contracts and obligations running to 2 or more persons jointly can be enforced by action at law only if all those jointly interested in the enforcement thereof join as plaintiffs. The theory is that a defendant should not be harassed by more than 1 action where his only agreed liability is to more than 1 person jointly."

We have no quarrel with the general statement made. Upon our view of the case, however, it has no application. Defendant makes a several promise to each of the co-owners of an account that it will not pay out on the account without the production

of the passbook. Payment without production of the book is a breach of the contract made with each and the payment is no more effective to discharge the banking institution than payment to any other unauthorized drawer. The promise made is not a promise "running to 2 or more persons jointly" within the meaning of the above quotation or of the law with respect to joint obligations. The fact that we have a statutory joint and survivor account should not be construed as precluding concomitant several obligations. The statute itself makes this clear. Under certain circumstances, it provides, payments from such accounts may be made to "any 1 of said persons." This being the case, individual obligations likewise may run to "any 1 of said persons," and may be enforced by any 1 of said persons in his own name and right. The bylaws, in their contractual provisions, are fully consistent with this portion of the statute.

Reversed and remanded for new trial. Costs to appellant.

CARR, C. J., and BUTZEL, SHARPE, BOYLES, and KELLY, JJ., concurred with SMITH, J.

REID and DETHMERS, JJ., concurred in the result.