SASANAS v MANUFACTURERS NATIONAL BANK OF DETROIT

Docket No. 64175. Submitted October 18, 1983, at Detroit.— Decided December 6, 1983.

Nick Sasanas purchased a six month "money market time deposit" in the amount of $20,000 at a branch of the Manufacturers National Bank of Detroit. The application form Sasanas filled out listed himself and his son, Nick Sasanas, Jr., as owners of the deposit "to either or the survivor of them". Sasanas was also issued a receipt listing himself and his son as deposit owners. Six months later, Sasanas claimed the interest on the deposit and allowed the deposit to automatically renew itself. A new receipt was issued to Sasanas. Sasanas also requested that the bank draft a letter to his son informing him that the money on deposit would be his in case of Sasanas's death. Two months later, the younger Sasanas withdrew the $20,000, receiving a cashier's check payable to himself or his father. He then dissipated the proceeds. Sasanas returned to the bank four months later to claim his interest and learned that his son had withdrawn the money on deposit. Sasanas filed suit against the bank in Wayne Circuit Court alleging breach of contract and negligence based on defendant's payment of the $20,000 to his son allegedly in violation of plaintiff's specific terms and wishes. Plaintiff claimed that he had instructed the bank that the deposit should belong to his son only upon plaintiff's death. Plaintiff's complaint also named his son as a codefendant on a theory of conversion. The trial court, Harold Hood, J., held that the deposit fell within a statute which holds a bank harmless from suit for payment to any person named as co-owner of a joint account, prior to contrary written notice, and found that plaintiff understood the application form and the receipts. A judgment of no cause of action in favor of the bank was entered. The court also concluded that Nick Sasanas, Jr., was aware of plaintiff's wish not to allow him access to the

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error §§ 609, 695, 839, 966.
[2, 3] 10 Am Jur 2d, Banks §§ 369, 500–503.
[4] 17 Am Jur 2d, Contracts § 321.
[5] [No Reference]

money until plaintiff's death and he was, therefore, liable for conversion. Judgment was entered against Nick Sasanas, Jr., for the entire $20,000 with interest. Plaintiff appealed. *Held:*

1. The trial court's finding that plaintiff intended to open a joint deposit money market account while fully aware of the implications was not clearly erroneous.

2. Plaintiff's contention that the statute upon which the trial court relied does not apply in this case because plaintiff indicated a testamentary intent is rejected.

3. Plaintiff's contention that defendant's payment to his son violated its contractual obligation to hold the money until maturity and repay it with interest is also rejected. Defendant's obligation to hold the money for repayment was a conditional one based upon the assumption that plaintiff and his son would leave the money in the bank until the maturity date.

4. Plaintiff's argument that he cannot be held to the terms of the joint deposit agreement because he signed the application without reading it or being advised of its contents is rejected. Regardless of whether defendant was bound by the terms of the depository agreement, he was bound by the provisions of the statute.

Affirmed.

1. APPEAL — FINDINGS OF FACT — COURT RULES.

The Court of Appeals does not set aside a trial court's findings of fact unless they are clearly erroneous; a finding of fact is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed (GCR 1963, 517.1).

2. BANKS AND BANKING — JOINT BANK ACCOUNTS — NOTICE.

A written notice to a bank by one of two parties in whose names has been opened a joint account payable to either or the survivor not to pay such deposit in accordance with the terms thereof apprises the bank of some defect in the joint account and holds it responsible for payments made thereafter; payments made and charged against such account prior to any such written notice shall be a valid release and discharge to the bank for such payments made on account of such deposits; in the absence of such written notice, the bank is not liable for payment to either joint account owner (MCL 487.703; MSA 23.303).

3. BANKS AND BANKING — JOINT TENANCY.

A depositor who directs a bank to pay his deposit to him or

anyone else designated may change the designation or limit the payment to himself or his order.

4. Contracts — Conditions Precedent.

A condition precedent is a fact or event which the parties to a contract intend must exist or take place before there is a right to performance; if the condition is not fulfilled, the right to enforce the contract does not come into existence.

5. Banks and Banking — Joint Tenancy — Knowledge of Law.

A depositor or designated joint tenant of a bank account is bound to know the law relative to such an account.

*Berry, Hopson, Francis, Mack & Seifman* (by *Ronald E. Mack),* for plaintiff.

*Michael R. Main, Michael D. Boutell, Christian C. Nilson and Eric C. Oppenheim* (by *Michael D. Boutell),* for defendant.

Before: V. J. Brennan, P.J., and Cynar and C. W. Simon,* JJ.

Per Curiam. Plaintiff appeals as of right from a judgment of no cause of action entered on April 14, 1982, following a bench trial.

On August 7, 1978, plaintiff purchased a six-month "money market time deposit" in the amount of $20,000 at a branch of the defendant bank. He spoke with Grace Dolecki, the assistant manager of the bank, who filled out the application form for him. The completed application listed both plaintiff and his son, Nick Sasanas, Jr., as owners of the deposit, "to either or the survivor of them". Plaintiff signed the application and was issued a receipt which also listed himself and his son as deposit owners.

Plaintiff returned to the bank on February 5, 1979, to claim the interest on the deposit. The

* Circuit judge, sitting on the Court of Appeals by assignment.

deposit was automatically renewed, and a new receipt issued to plaintiff which was, in pertinent part, identical to the first. The deposit, thus, had a new maturity date of August 6, 1979. At plaintiff's request, Dolecki drafted a letter to his son informing him that the money in question would be his in case of plaintiff's death.

On April 3, 1979, Nick Sasanas, Jr., appeared at the bank and, upon producing a chauffeur's license and a withdrawal slip, was issued a cashier's check for $20,000 payable to himself or to plaintiff. He proceeded to deposit the check in his own savings account, thereafter dissipating the proceeds through payment of numerous personal debts and the purchase, for cash, of a new Ford Thunderbird. When plaintiff returned on or about August 6, 1979, for his next interest payment, he discovered that the money had previously been paid out.

In commencing this action on September 14, 1979, plaintiff alleged breach of contract and negligence on defendant's part based on its payment of the $20,000 to his son, "in violation of the specific terms and wishes of the depositor, plaintiff herein". Plaintiff claimed he instructed the bank that the deposit should belong to his son only upon the death of plaintiff. The complaint named the plaintiff's son as codefendant on a theory of conversion.

By its answer, defendant denied that plaintiff had expressed only a testamentary intent when applying for the deposit, maintaining that plaintiff had applied for, as well as signed, an agreement to establish a certificate payable to himself or his son.

At the ensuing trial, Grace Dolecki testified that she completed the application according to plaintiff's instructions, and she explained to him that "either party has all the rights in the account". If

plaintiff had told her that he intended that the money go to his son only upon his death, she "would have put it in trust for him". She did not remember telling plaintiff that one had to display the deposit receipt in order to withdraw funds from the deposit. She drafted the letter to plaintiff's son because of plaintiff's concern that his son should "know where the money was" if he died. Dolecki did not specifically explain to plaintiff that his son could withdraw the money at any time.

The manager of the bank testified that an owner of a money market time deposit need not present a receipt to withdraw the funds. "All you have to do is identify the party presenting it for payment." The manager stated that plaintiff's son was entitled to the money because he was a "joint holder on the account".

Plaintiff testified that he had no intention of allowing his son to have the money prior to his death, and that he expressed such intent to Dolecki and to his son. According to plaintiff, Dolecki told him that an owner had to present the receipt to withdraw the funds. Plaintiff said that he read the receipt issued on February 5, 1979, but did not understand the meaning of the notation of ownership appearing on it. Plaintiff previously had several savings accounts and certificates of deposit at the same bank which were expressly made trust accounts at his direction.

By deposition, Nick Sasanas, Jr., testified that his father had given him permission to withdraw the money.

At the close of proofs and after hearing arguments from both sides, the trial judge stated his findings of fact and conclusions of law.

The judge held that the deposit fell within a statute which holds a bank harmless from suit for

payment to any person named as co-owner of a joint account, prior to contrary written notice. MCL 487.703; MSA 23.303. The court found that plaintiff understood the application form and the receipts. As for plaintiff's son, the court concluded that he was aware of plaintiff's wish not to allow him access to the money until his death, and he was, therefore, liable for conversion. Judgment was entered against Nick Sasanas, Jr., for the entire $20,000 with interest.

This Court does not set aside the trial court's findings of fact unless they are clearly erroneous. GCR 1963, 517.1; *Borkus v Michigan National Bank,* 117 Mich App 662, 670; 324 NW2d 123 (1982). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Tuttle v Dep't of State Highways,* 397 Mich 44, 46; 243 NW2d 244 (1976); *Borkus, supra,* p 670.

In this case, the trial court did not clearly err by concluding that plaintiff intended to make a joint deposit. The application form and both receipts listed his son as a joint owner of the deposit, "to either or the survivor of them". Plaintiff had previously initiated several trust accounts at the same bank. Plaintiff stressed the letter drafted by the bank, but it is consistent with a finding that plaintiff intended to make a joint deposit and simply wished to inform his son of its existence and location in case of his death. Rights of survivorship are an inherent characteristic of a joint account. Nowhere does the letter state that plaintiff's son could not withdraw the money while plaintiff lived. Moreover, Dolecki testified that she explained to plaintiff that his son would have

equal rights where the deposit was concerned. There was no evidence beyond plaintiff's own assertions that he had a purely testamentary intent and that he so informed the bank.

The question to be resolved is whether the deposit in this case, in view of the circumstances, fell within the statute absolving defendant of liability for payments on a joint account. The statute in question provides:

"When a deposit shall be made, in any bank by any person in the name of such depositor or any other person, and in form to be paid to either or the survivor of them, such deposits thereupon and any additions thereto, made by either of such persons, upon the making thereof, shall become the property of such persons as joint tenants, and the same together with all interests thereon, shall be held for the exclusive use of the persons so named and may be paid to either during the lifetime of both, or to the survivor after the death of one [1] of them, and such payment and the receipt or acquittance of the same to whom such payment is made shall be a valid and sufficient release and discharge to said banking institution for all payments made on account of such deposits prior to the receipt by said bank of notice in writing not to pay such deposit in accordance with the terms thereof." MCL 487.703; MSA 23.303.

In *Manufacturers National Bank v Schirmer,* 303 Mich 598, 603; 6 NW2d 908 (1942), the Court interpreted this statute, stating: "This section of the act provides that prior to any notice to the bank by either of the joint depositors, payments made and charged against such account shall be a valid release and discharge to the bank for such payments made on account of such deposits." Of course, a donor-depositor may revoke a joint account in his lifetime, and the statute so provides.

"If a depositor directs a bank to pay the deposit to the depositor, or another designated, the depositor may change the designation or limit payment to himself or his order." *Rasey v Currey's Estate,* 265 Mich 597, 602; 251 NW 784 (1933). "One of the purposes that the notice can serve is to apprise the bank of some defect in the joint account and hold it responsible for payments made thereafter." *Schirmer, supra,* p 603. In the absence of written notice, however, the bank is not liable for payment to either joint account owner. *Esling v City National Bank & Trust Co of Battle Creek,* 278 Mich 571, 578-580; 270 NW 791 (1936).

As noted above, the trial court found that plaintiff intended to open a joint deposit money market account while fully aware of the repercussions. This finding was not clearly erroneous. Moreover, plaintiff does not challenge the applicability of the statute to money market deposits per se. Indeed, the statute may properly be applied to this form of deposit when made in the name of two or more persons. Rather, plaintiff contends that the statute does not apply in this instance because plaintiff indicated a testamentary intent, citing *First National Bank & Trust Co v Huntley,* 251 Mich 483; 232 NW 192 (1930). The latter decision stands for the proposition that the statute does not cover deposits to take joint effect only upon a future condition. The donor-depositor therein stipulated that the money would go to his son "in case of death or sickness" of the depositor. *Huntley,* p 484. The Court held that "[t]he purpose of the statute to authorize joint deposits, to declare their effect, and to protect the bank on payment, would be subverted by extending it to future uncertain and conditional instructions". *Huntley,* pp 485-486.

In this case, by way of contrast, plaintiff unconditionally opened a joint account and did not

revoke it by notifying the bank prior to the payment to his son. "Plaintiff did not see fit to protect [his] rights in accordance with the statutory provision; and not having done so, [he] is without just ground for complaint because of the bank *[sic]* having made payment." *Esling, supra,* p 579.

Next, plaintiff urges that defendant's payment to his son violated its contractual obligation to hold the money until maturity and repay it with interest. According to plaintiff, this was an independent obligation which existed even though this was a joint account. *LaValley v Pere Marquette Employes' Credit Union,* 342 Mich 639; 70 NW2d 798 (1955).

It seems obvious that defendant's obligation to hold the money for repayment was a conditional one, based upon the assumption that plaintiff and his son would leave the money in the bank until the maturity date. "A condition precedent is a fact or event which the parties intend must exist or take place before there is a right to performance." *Knox v Knox,* 337 Mich 109, 118; 59 NW2d 108 (1953); *McCall v Freedman,* 35 Mich App 243, 246; 192 NW2d 275 (1971). "If the condition is not fulfilled, the right to enforce the contract does not come into existence." *Knox, supra,* p 118.

In *LaValley, supra,* the Court found the defendant credit union liable for payment to a joint tenant in the plaintiff's account because the payment was made without presentation of the passbook, in violation of the contract of deposit. *LaValley,* pp 644-646. The case is not on point, as possession of the deposit receipt was not requisite to withdrawal of the deposit at issue here.

Plaintiff claims he cannot be held to the terms of the joint deposit agreement because he signed

the application without reading it or being advised of its contents. In *Esling, supra,* p 580, the Supreme Court dismissed an identical assertion, stating, "[R]egardless of whether appellant is bound by the terms of the depository agreement, she is bound by the provisions of the statute * * *. She is bound to know the law."

Affirmed.