ALLSTAEDT *v.* OCHS.

1. EXECUTORS AND ADMINISTRATORS—JOINT BANK ACCOUNTS.
   In executor's suit against testator's daughter for amount withdrawn from two bank accounts two months before testator died, where defendant daughter's answer admitted she had promised her father not to withdraw funds therefrom without his consent, question for determination was whether or not testator had made a gift of such accounts to the daughter (3 Comp. Laws 1929, § 12063, as amended by Act No. 286, Pub. Acts 1937).

2. BANKS AND BANKING—JOINT ACCOUNTS—TITLE OF SURVIVOR—REBUTTABLE PRESUMPTION.
   The creation of a joint bank account between two persons does not conclusively establish title thereto in the survivor but merely creates a presumption of ownership in the survivor which is rebuttable by competent evidence to the contrary (3 Comp. Laws 1929, § 12063, as amended by Act No. 286, Pub. Acts 1937).

3. SAME—JOINT ACCOUNTS—PRESUMPTIONS—EVIDENCE.
   The presumption, created by statute, that the survivor has title to a joint bank account has no weight as evidence when challenged by rebutting testimony (3 Comp. Laws 1929, § 12063, as amended by Act No. 286, Pub. Acts 1937).

4. EXECUTORS AND ADMINISTRATORS—JOINT ACCOUNTS—GIFTS—IN-
TENT.

Where aged parent deposited money in name of himself and
one of his children, defendant herein, latter was liable to
account to executor of parent's estate for sums withdrawn
therefrom during parent's lifetime without his consent con-
trary to her agreement with him, where testimony, including
daughter's admission as to limited power of withdrawal, in-
dicated he wanted someone able to take care of emergencies but
did not intend to make a gift of the moneys in the accounts
to her and record fails to show proof of parent's intent
to vest a right of survivorship in the daughter (3 Comp.
Laws 1929, § 12063, as amended by Act No. 286, Pub. Acts
1937).

5. WITNESSES—MATTERS EQUALLY WITHIN KNOWLEDGE OF DECEASED
—WAIVER OF STATUTE.

In suit by executor of parent's estate to recover amount which
he had deposited in joint account with daughter, court properly
ruled on the exclusion of testimony of the opposite parties
on matters equally within the knowledge of the deceased and
the benefit of such statute was not waived by the executor by
relying on the admission of defendant in her answer (3 Comp.
Laws 1929, § 14219).

Appeal from Wayne; Webster (Clyde I.), J.
Submitted April 15, 1942. (Docket No. 22, Calendar
No. 41,816.) Decided June 10, 1942. Rehearing
denied September 8, 1942. See opinion *post*, 238.

Bill by Charles E. Allstaedt, executor of the estate
of Peter R. Graden, deceased, against Ruth Graden
Ochs and others for an accounting to determine the
ownership of money and other personal property
and for an injunction. Decree for plaintiff. De-
fendants appeal. Affirmed.

*Edward A. Smith* and *Ralph E. Routier (Clarence
W. Videan,* of counsel), for plaintiff.

*Payne & Payne (Ludwig A. Bachor* and *Howard
M. Duncanson,* of counsel), for defendants.

BUSHNELL, J.   This is an appeal by defendants Ruth Graden Ochs, daughter of Peter R. Graden, Fred Ochs, her husband, and Earl F. Ochs, her son, from a decree requiring the defendants, jointly and severally, to pay forthwith to plaintiff Charles E. Allstaedt, the executor of the estate of Peter R. Graden, the sum of $21,500, together with interest thereon from October 10, 1938.   The sum mentioned represents the proceeds of two bank accounts, the first of $10,300 in The Detroit Bank, and the second of $11,200 in the Commonwealth Bank.   These accounts stood jointly in the names of Peter R. Graden and Ruth Graden Ochs, and the funds were withdrawn by Ruth Graden Ochs on October 10, 1938. Peter R. Graden died December 10, 1938, at the age of 79.   He had four children, three of whom, defendant Ruth Graden Ochs, her sister Ethel Burns, and her brother Niles Graden, survived their father.

During 1933, 1934, and 1935 Graden distributed all the real estate he owned among his three living children in equal shares.   In November of 1934 he opened a joint bank account at the Detroit Savings Bank (now The Detroit Bank) in the names of Peter R. Graden and Ruth Graden Ochs.   In December of that year he attempted to open another joint bank account with himself, Ruth and Niles at the Commonwealth Bank, but being advised that, under the bank regulations then in force, only two names could be placed on an account, he opened this account in the names of himself and Ruth.

A branch manager at the Commonwealth Bank at the time the account was opened testified that he explained to Graden that such an account would permit withdrawals by either and the balance would be payable to either or the survivor upon the death of one of the parties.   Ruth admitted in her answer that at the time the accounts were opened she promised her father that she would not withdraw any sums from

these accounts without his consent or authorization, and that no withdrawals were made by her until October 10, 1938.

In September of 1937, Graden executed his last will and testament and, aside from minor gifts mentioned therein, divided his estate equally among his three children. In September of 1938 he was taken ill. On October 4th he underwent a serious operation, and it was six days later that Ruth withdrew the balance in each of the accounts after certain withdrawals had been made by Graden himself during his illness. Graden suffered a cerebral hemorrhage and died December 10, 1938.

Plaintiff Allstaedt qualified as the executor named in the will. After a hearing in the probate court he was authorized by the court to institute this action. The hearing in the circuit court resulted in a record on appeal consisting of 801 pages and 270 exhibits. Despite the extent of the record and the documentary evidence referred to therein, the simple question presented here, as it was in the circuit court, is whether or not Peter R. Graden made a gift of the two bank accounts to his daughter, Ruth Graden Ochs.

An examination of the testimony and exhibits referred to requires the conclusion that the trial judge who had the advantage of seeing and hearing the witnesses correctly determined that Peter Graden never intended to make a gift of the money in the joint accounts. There is no doubt that Ruth was Peter Graden's favorite child, and she certainly did much for him, especially during his latter days. Yet when he made his will less than a year prior to his last illness he divided his estate equally among his three children. The will does not indicate any preference of one over the other; nor does it mention the joint bank accounts. His agreement with Ruth, which she admitted, to the effect that

no moneys should be withdrawn without his knowledge and consent, had not been changed when she withdrew the balances prior to his death.

Prior to the time the bank accounts were first opened, the statute governing joint bank deposits read as follows:

"When a deposit shall be made in any bank or trust company by any person in the name of such depositor or any other person, and in form to be paid to either or the survivor of them, such deposits thereupon and any additions thereto, made by either of such persons, upon the making thereof, shall become the property of such persons as joint tenants, and the same together with all interest thereon, shall be held for the exclusive use of the persons so named and may be paid to either during the lifetime of both, or to the survivor after the death of one of them, and such payment and the receipt or acquittance of the same to whom such payment is made shall be a valid and sufficient release and discharge to said bank for all payments made on account of such deposits prior to the receipt by said bank of notice in writing not to pay such deposit in accordance with the terms thereof." 3 Comp. Laws 1929, § 12063 (Stat. Ann. § 23.303).

This section of the statute was amended by Act No. 286, Pub. Acts 1937 (Comp. Laws Supp. 1940, § 12063, Stat. Ann. 1941 Cum. Supp. § 23.303), and the pertinent additions thereto have since read as follows:

"When a deposit has been made, or shall hereafter be made, in any banking institution transacting business in this State, in the names of two or more persons, payable to either or the survivor or survivors, such deposit or any part thereof or any interest or dividend thereon and any additions thereto, made by any one of the said persons, shall

become the property of such persons as joint tenants, and the same shall be held for the exclusive use of the persons so named and may be paid to any one of said persons during the lifetime of said persons or to the survivor or survivors after the death of one of them, and such payment and the receipt or acquittance of the same to whom such payment is made shall be a valid and sufficient release and discharge to said banking institution for all payments made on account of such deposits prior to the receipt by said bank of notice in writing not to pay such deposit in accordance with the terms thereof.

"The making of the deposit in such form shall, in the absence of fraud or undue influence, be *prima facie evidence, in any action or proceeding,* to which either such banking institution or surviving depositor or depositors is a party, of the intention of such depositors to vest title to such deposit and the additions thereto in such survivor or survivors."

The creation of the joint bank accounts by the deceased did not conclusively establish title thereto in the survivor but merely created a presumption of ownership in the survivor which is rebuttable by competent evidence to the contrary. *Van't Hof* v. *Jemison,* 291 Mich. 385. The presumption created by the statute has no weight as evidence when challenged by rebutting testimony. *Hill* v. *Hariston,* 299 Mich. 672. Such presumption disappears in the face of the evidence presented in this case. Ruth's admission that she was not to withdraw money without her father's consent or authority indicates that her father did not intend to make a gift of the moneys in the accounts. Also, the bank branch manager who handled the opening of one of the accounts testified that Peter Graden said at the time that the account was for the purpose of having someone able to take care of emergencies, but that he wanted the money to go to all of his children.

Other disinterested witnesses testified to like effect. Because of the rebutting testimony, we have searched the record for proof of Peter Graden's intent to vest a right of survivorship in his daughter Ruth, and that intent cannot be found.

The court properly ruled on the exclusion of testimony of the opposite parties on matters equally within the knowledge of the deceased as provided in 3 Comp. Laws 1929, § 14219 (Stat. Ann. § 27.914), and the executor did not waive the benefit of this statute by relying on the admission in the answer of defendant Ruth Graden Ochs.

The decree entered in the circuit court is affirmed, with costs to appellee.

CHANDLER, C. J., and BOYLES, NORTH, STARR, BUTZEL, and SHARPE, JJ., concurred. WIEST, J., took no part in this decision.

## ON MOTION FOR REHEARING.

PER CURIAM. In Frank v. Schultz, 295 Mich. 714, 724, four members of this court signed a brief opinion (three dissenting) in which the statement was made "The bank accounts vested in defendant as survivor." To that extent, the Schultz Case is overruled by the instant case. Rehearing denied.

CHANDLER, C. J., and BOYLES, NORTH, STARR, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred. WIEST, J., took no part in this decision.