KIRILLOFF *v.* GLINISTY.

1. BANKS AND BANKING — JOINT DEPOSITS — PRESUMPTION AS TO SURVIVORS.
    The statute relative to joint deposits in names of 2 or more persons or survivors creates a presumption that the funds so placed are intended to be the property of the survivor or survivors (CL 1948, § 487.703).

2. SAME—JOINT DEPOSITS—PRESUMPTIONS—EVIDENCE.
    The statutory presumption relative to joint and survivor deposits that the survivor is entitled to the funds in such account is a presumption where there is a rational connection between the fact proved and the ultimate fact presumed showing that the presumption arises from evidentiary facts of probative inferential worth, and the presumption does not disappear upon the introduction of evidence tending to controvert the presumed fact (CL 1948, § 487.703).

3. SAME—JOINT DEPOSITS—PRESUMPTIONS—EVIDENCE—CONFLICTING INFERENCES.
    The permissible inference, embodied in the statutory presumption, that decedent whose funds were put into 2 accounts in the names of herself and 2 of her 4 children intended the other joint and survivor account signatories to have the funds in that account upon her death, remained as a permissive inference notwithstanding other testimony that raised an inference that she intended that the funds be divided among her 4 children, and supported trial court's finding for the surviving signatories (CL 1948, § 487.703).

4. SAME—JOINT ACCOUNTS—FINDINGS AS TO OWNERSHIP—CREDIBILITY OF WITNESSES.
    Findings of fact by trial court in actions respecting ownership of funds deposited in joint and survivor accounts should not be

---

REFERENCES FOR POINTS IN HEADNOTES
[1-4] 10 Am Jur 2d, Banks § 372.

set aside by the Supreme Court unless clearly erroneous, especially where no disinterested witnesses have testified, in view of the special opportunity afforded to judge the credibility of witnesses who have appeared (CL 1948, § 487.703).

Appeal from Wayne; Gilmore (Horace W.), J. Submitted February 4, 1965. (Calendar No. 45, Docket No. 50,608.) Decided May 11, 1965.

Complaint by Lydia K. Kirilloff, special administratrix of the estate of Anna Glinisty, deceased, against Alexander Glinisty, Vera Wallman, and Bank of Commerce, a banking corporation, to recover assets, in the form of savings accounts, from defendants. Complaint dismissed. Plaintiff appeals. Affirmed.

*Louis Wechsler* and *Saul Levin,* for plaintiff.

*LaPlata, Finnen & Koscinski* (*George LaPlata,* of counsel), for defendants.

SOURIS, J. Plaintiff administratrix of the estate of Anna Glinisty filed a bill of complaint July 10, 1962, asking that the funds in two joint and survivor savings accounts which were in the names of decedent and defendants Alexander Glinisty and Vera Wallman, two of decedent's four children, be declared part of decedent's estate, and that an injunction issue forbidding payment of funds from the accounts until further order of the court.[1] After trial the chancellor ordered the complaint dismissed, from which order plaintiff appeals.

---

[1] The two joint and survivor accounts involved in this litigation differ only in amount and in the fact that one is a time savings account while the other is a demand savings account. For convenience, we treat this appeal as if only one bank account were involved.

Of significance in this appeal is that paragraph of CL 1948, § 487.703 (Stat Ann 1957 Rev § 23.303)[2] which provides:

"The making of the deposit  *  *  *  [in the names of two or more persons, payable to either or the survivor or survivors] shall, in the absence of fraud or undue influence, be prima facie evidence, in any action or proceeding, to which either such banking institution or surviving depositor or depositors is a party, of the intention of such depositors to vest title to such deposit and the additions thereto in such survivor or survivors."

This Court has held that this statute creates a statutory presumption that funds placed in a joint and survivor bank account are intended to be the property of the survivor or survivors. See *Jacques v. Jacques* (1958), 352 Mich 127, 135, 136. We there unanimously rejected counsel's contention that if evidence be introduced which tends to negate the existence of the presumed fact, "the presumption disappears and may not be weighed in the balance against such evidence." 352 Mich 127, 136.

This reasoning is consistent with our recent decision in *In re Wood Estate* (1965), 374 Mich 278 (5 ALR3d 1), where we analyzed the theory of presumptions in some detail. In the case of the statutory presumption here involved, there is a rational connection between the fact proved (the existence of a joint and survivor account) and the ultimate fact presumed (that the survivor is entitled to the funds in such account), and thus the presumption arises from evidentiary facts of probative inferential worth. This being so, even though facts might be introduced tending to controvert the presumed fact,

[2] This statute and cases decided thereunder are the subject of an article by Professor Wellman in 63 Mich L Rev 629 (1965): The Joint and Survivor Account in Michigan—Progress Through Confusion.

the presumed fact nonetheless remains as at least a permissible inference for the trier of fact. See the discussion in the *Wood Case,* 374 Mich 278, 288–295 (5 ALR3d 1).

In this case of Kirilloff, decedent Anna Glinisty visited the Bank of Commerce on January 15, 1959, in the company of defendant Wallman, her daughter. Mrs. Glinisty had consulted with her attorney the day before, but we have no record of what they discussed. Plaintiff called as a witness John Ellesin, manager of the savings department of the bank.

Ellesin testified that in his conversation with Mrs. Glinisty she asked whether she could open an account in the names of herself and her four children, to which Ellesin replied, "That's up to you. You can [sic] put all of them; you can put one or two." He testified that he told Mrs. Glinisty that only those named on the account's signature card and presenting the pass book could withdraw funds from the account, and that "You can put the account on two names or one name or you can go ahead and make a will." The signature card recited that the funds represented by the account book were "the property of the undersigned, as joint tenants, and shall be payable to either of [sic] the survivors in accordance with the laws of the State of Michigan."

According to Ellesin, the reason given by Mrs. Glinisty for opening the joint and survivor account was to provide access to the funds in the event of her illness. Even if Mrs. Glinisty had intended that during her life defendants have access to the account only for her benefit, it does not necessarily follow that she did not intend that defendants have those funds upon her death. See *Jacques* v. *Jacques* (1958), 352 Mich 127, and the discussion in Wellman, The Joint and Survivor Account in Michigan—Prog-

ress Through Confusion, 63 Mich L Rev 629, 661–664 (1965).

Ellesin also testified that Mrs. Glinisty told him, " 'In case anything happens to me, I want that money divided four ways.' " Plaintiff argues that since Ellesin so testified, and since the chancellor stated that he believed Ellesin was telling the truth, it necessarily follows that, despite the statutory presumption in defendants' favor, they are not entitled to the funds in the bank account.

The defendants offered the expected testimony of Mrs. Glinisty's indomitable intention that, upon her death, they benefit from the deposited funds. We might note that we are not convinced that there were any disinterested witnesses, even Ellesin having testified that he did "a lot of business" with plaintiff's husband. From the evidence presented, two inferences were open to the chancellor. Mrs. Glinisty was of unchallenged competency, owned her own home, supported herself by her own labor, had long maintained a savings account in defendant bank, sought, the day after having talked with an attorney, to change the nature of that account, was specifically informed by Ellesin of the incidents of a joint and survivor account, signed a document detailing those incidents, and maintained the account unchanged until her death three years later. The significance of analogous facts, as indicating that a depositor "obviously knew the nature and purpose of bank deposits of the character here involved", was recognized in *Lau* v. *Lau* (1943), 304 Mich 218, 223, 224. The permissible inference, embodied in the statutory presumption, is that she intended the other joint and survivor account signatories to have the funds in that account upon her death. Indeed, absent other evidence this would be a mandatory inference. See *In re Wood Estate* (1965), 374 Mich 278, 289 (5 ALR3d 1).

Defendants contested none of the facts just recited, but instead introduced what we called in *Wood* inferentially inconsistent evidence, that is, evidence which, while not controverting the evidence from which a presumed fact might be inferred, nonetheless could give rise to an inference inconsistent with the existence of the presumed fact. We refer here to Ellesin's testimony that Mrs. Glinisty said she wanted the money in the account divided among her four children. One could infer from this evidence that despite the explanation given Mrs. Glinisty about the incidents of a joint and survivor account she nonetheless intended that the funds on deposit at her death be divided among her four children.

Faced with two conflicting inferences, the chancellor chose to draw the one supported by the statutory presumption, to which "some weight may be given * * * as embodying a course of experience." *In re Wood Estate* (1965), 374 Mich 278, 294 (5 ALR3d 1). The effect of his reasoning was that although Ellesin's testimony removed the presumed fact from the realm of a mandatory inference, it still remained as a permissive inference. Thus, even if it be believed that Mrs. Glinisty said she wanted the account's funds divided among her four children, by opening the joint account in the names of defendants only soon after consulting with an attorney and just after the incidents of joint accounts had been explained to her, and maintaining it in face of repeated explanations of those incidents,[3] her actions were such that the chancellor was entitled to infer, in harmony with the statutory presumption, that she

---

[3] Ellesin testified about Mrs. Glinisty's visits to the bank after opening the joint and survivor account:

"*A.* She was coming to the bank for deposits, and every time she stopped and says, 'Well, is that all right? Did anybody touch my money?'

"I says, 'Mrs. Glinisty, don't be afraid, nobody can take your money except you or the other two, in case they've got the book.'"

intended that only defendants were to have title to the account funds in the event of her death. "Findings of fact [by the trial court] shall not be set aside unless clearly erroneous. In the application of this principle, regard shall be given to the special opportunity of the trial court to judge the credibility of those witnesses who appeared before it." GCR 1963, 517.1.

No other question raised upon appeal merits discussion.

Affirmed. Costs to appellees.

T. M. KAVANAGH, C. J., and KELLY, BLACK, SMITH, O'HARA, and ADAMS, JJ., concurred with SOURIS, J.

DETHMERS, J., concurred in result.