*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ESTATE OF ROBERT G. LEWIS, by KATHY J.
LEWIS, Personal Representative,

        Plaintiff-Appellant,

v

CAROL L. ROSEBROOK,

        Defendant-Appellee.

FOR PUBLICATION
July 16, 2019
9:00 a.m.

No. 343765
Montcalm Probate Court
LC No. 2017-032635-CZ

Before: SWARTZLE, P.J., and M. J. KELLY AND TUKEL, JJ.

SWARTZLE, P.J.

In Michigan, two or more parties can establish and deposit funds in a banking institution in a joint account with the right of survivorship. In doing so, the parties create a joint tenancy in the account. Under MCL 487.703, the banking institution is shielded from liability for any withdrawal of funds made by a co-owner of the account, at least in the absence of prior written notice that withdrawals are not permitted. This statutory shield does not, however, also serve as a sword for the withdrawing co-owner to pierce the non-withdrawing co-owner's rights. Instead, the withdrawing co-owner must take the funds from the account *as a co-owner* and, therefore, must use the funds in a manner consistent with the other co-owner's rights.

Here, the parties had three joint accounts with the right of survivorship. The parties had equal ownership of the accounts and had equal rights to access and use the funds. While the parties were both still living, defendant transferred substantially all of the funds from the joint accounts to her own personal accounts. In doing so, she acted in her own personal capacity, rather than in her capacity as a co-owner in the joint tenancy, and this was unlawful. For the reasons set forth below, we reverse in part the judgment of the probate court and remand for further proceedings.

## I. BACKGROUND

This case involves the actions of both Robert Lewis and his daughter, Kathy Lewis. To avoid confusion, we refer to Robert Lewis by his last name and to Kathy Lewis as his daughter or simply as plaintiff.

-1-

Carol Rosebrook and Lewis were a couple for approximately 24 years, living and socializing together, though they never married. They had several joint and individual financial accounts, three of which are relevant here. In 2001, 2003, and 2009, the parties opened joint accounts with the right of survivorship at Old Kent Bank (later Fifth Third Bank) and Sidney State Bank. All three accounts were funded primarily, if not exclusively, by Lewis. The couple used the funds to pay their ordinary day-to-day expenses, sometimes consulting each other and sometimes not, depending on the nature and amount of the expense. As the probate court concluded, "In all respects these accounts were held and used equally by both parties."

Lewis was diagnosed with a serious illness in 2013, and in October 2016, he moved into a care facility. The couple ended their relationship in late January 2017, and they agreed to a 30-day period to sort out their affairs. Immediately after the split, Lewis and his daughter went to Fifth Third Bank and asked that the bank "freeze" the joint accounts. They maintain that they were told that the accounts could not be "frozen,"[1] and they left the bank without withdrawing any funds or closing the accounts.

Over the next two weeks, Rosebrook transferred approximately $255,000 from the three accounts to accounts solely in her own name; this total represented substantially all of the funds in the three accounts. At the time, she was a cotrustee of the Robert G. Lewis, Sr., Trust. Rosebrook also had the power to act on Lewis's financial behalf under a durable power of attorney. Lewis did not authorize or otherwise agree to the transfers, nor did he even know that the funds had been removed until he went to one of the banks and tried to access an account.

In May 2017, while Lewis was still living, the probate court appointed his daughter as his conservator. Lewis was mentally competent but, as a result of his physical condition, he needed assistance with his financial affairs. On Lewis's behalf, his daughter sued Rosebrook, alleging claims of conversion, breach of fiduciary duty, constructive trust, and oral trust over the funds that Rosebrook transferred from the joint accounts. Lewis died in October 2017 and subsequently his estate, with his daughter as the personal representative, became the plaintiff in this case.

The probate court held a bench trial. Plaintiff maintained that the accounts were established merely for Lewis's convenience or, at most, for the payment of mutual household expenses, and that Lewis did not intend to gift all of the funds in the accounts to Rosebrook. Plaintiff also argued that Rosebrook's statutory authority to withdraw funds from the accounts as a joint-account holder did not necessarily give her the right to retain those funds irrespective of Lewis's interest in the funds. In contrast, Rosebrook argued that, as a joint-account holder, she

---

[1] Assuming the accuracy of the testimony, the bank's position was an incorrect statement of law, although it might have been a correct statement of the bank's internal policies. As our Supreme Court observed in *Esling v City Nat'l Bank & Trust Co of Battle Creek*, "While the statute [now MCL 487.703] provides for stopping payment by notice in writing; there is no provision in the statute which prevents the bank, if it sees fit to do so, from respecting an oral notice from one of the parties not to pay the other." 278 Mich 571, 580; 270 NW 791 (1936).

had "complete and unlimited rights" to all funds in the accounts, even to the exclusion of Lewis during his lifetime.

The probate court issued a written opinion and entered judgment in favor of Rosebrook. The probate court concluded that the parties held the accounts as joint tenants with the right of survivorship under MCL 487.703. The probate court further concluded that there was not reasonably clear and persuasive proof to overcome the statutory presumption that title and access to the funds were intended to be shared jointly. Although Lewis testified during his deposition that the accounts were set up for his own convenience, the probate court noted Lewis's testimony that he wanted to take care of Rosebrook and that he gave her the proverbial "keys to the safe" by setting up the joint accounts. In fact, the relationship was a relatively long one, and the financial arrangements were created and maintained in different years and at different institutions. At all times, both parties had equal access to and equal use of the funds in the joint accounts. Moreover, Lewis was a successful businessman, and the accounts were established long before he became ill or needed assistance with his finances. In fact, while he later became physically frail, he appears to have retained his mental competency well past the filing of this lawsuit. Given all of this, the probate court concluded that these were not financial accounts set up jointly for Lewis's mere convenience.

With regard to the parties' respective interests, Rosebrook testified that they considered the funds in the joint accounts as "our money." The evidence presented at trial showed that both parties freely used the funds in the accounts to pay for their personal and mutual needs. Although they discussed larger withdrawals before making them, Rosebrook did not need Lewis's permission to access the accounts, and she regularly used the accounts to pay bills and her own expenses. Rosebrook even maintained that Lewis established the accounts as part of a plan for their retirements.

The probate court concluded that Rosebrook and Lewis were co-owners of the accounts and had equal interests in them. The probate court reasoned that, because Rosebrook had the right to make withdrawals and transfers, and her rights were not limited to matters of Lewis's convenience, Rosebrook had the absolute right to withdraw and retain all of the funds from the joint accounts, notwithstanding any right Lewis had to the funds as a joint tenant. Similarly, had Lewis withdrawn all of the funds when he and his daughter went to the bank after the couple broke up, he would have been entitled to keep all of the funds and Rosebrook would have had no recourse, according to the probate court. Therefore, the probate court held that plaintiff's claims were without merit.

Plaintiff appeals as of right.

## II. ANALYSIS

On appeal, plaintiff argues that the probate court clearly erred by finding that Lewis gifted Rosebrook an interest in the accounts during his lifetime. Plaintiff emphasizes that this is not a survivorship case and asserts that, during Lewis's life, Rosebrook's rights to the funds were limited to matters of Lewis's convenience, such as paying his bills. Even if Rosebrook had an ownership interest in the funds during Lewis's lifetime, plaintiff argues that the probate court erred by allowing Rosebrook to retain substantially all of the funds from the accounts.

According to plaintiff, the right to withdraw funds is not the same as the right to retain funds, and the probate court erred by failing to order Rosebrook to return at least a portion of the funds.

## A. STANDARDS OF REVIEW

"This Court reviews for clear error the probate court's factual findings and reviews de novo its legal conclusions." *In re Brody Conservatorship*, 321 Mich App 332, 336; 909 NW2d 849 (2017). "A finding is clearly erroneous when a reviewing court is left with a definite and firm conviction that a mistake has been made, even if there is evidence to support the finding." *Id*. (cleaned up). We "defer to the probate court on matters of credibility, and will give broad deference to findings made by the probate court because of its unique vantage point regarding witnesses, their testimony, and other influencing factors not readily available to the reviewing court." *Id*. (cleaned up). We review de novo any statutory interpretation by the probate court. *In re Redd Guardianship*, 321 Mich App 398, 404; 909 NW2d 289 (2017).

## B. JOINT TENANCY WITH THE RIGHT OF SURVIVORSHIP UNDER MCL 487.703

Our Legislature has enacted a variety of statutes governing a party's financial arrangements. As one example, the Legislature enacted the statutory joint account act in 1978. MCL 487.711 *et seq*. A joint financial account created under this act permits modification to suit the parties' particular needs, including identifying who can revoke the contractual arrangement and who owns the funds held in the account during the parties' lifetimes. MCL 487.715. An account subject to this act has the beneficial feature of making explicit what is often left implicit, unstated, or simply unknown. There is nothing in the record, however, to suggest that the three accounts in this dispute meet the conditions of the statutory joint account act.

Decades prior to its enactment of the statutory joint account act, the Legislature adopted a similar, albeit more basic statute regulating certain joint financial accounts. In its current form, the statute provides that two or more parties may create a joint account in a banking institution with any funds in the account (deposits and interest, dividends, or other additions, if any) payable to the survivor. MCL 487.703. The parties hold the funds in the account as "joint tenants . . . for the exclusive use of the persons so named" on the joint account. *Id.* The funds "may be paid to any 1 of said persons during the lifetime of said persons or to the survivor or survivors after the death of 1 of them." *Id.* Importantly for the banking institution, when the institution pays funds from the account to one of the parties, the institution is released from liability with respect to those funds unless and until the institution receives written notice not to make any payment from the account. *Id.*; *Dep't of Treasury v Comerica Bank*, 201 Mich App 318, 330; 506 NW2d 283 (1993). Finally, when a party makes a deposit into the account, the deposit is "prima facie evidence" of the party's intention "to vest title to such deposit and the additions thereto in such survivor or survivors," unless fraud or undue influence is shown. MCL 487.703.

Under this earlier statute, once funds are deposited and any additions accrued in the account, the assets are held by the parties as a joint tenancy. Broadly speaking, a joint account under MCL 487.703 provides two primary rights—a right of proportional share of the funds in the account and a right of survivorship. The parties, by their words or deeds, can agree to put conditions or restrictions on the account, for example, by expressing an intent that the funds are to be held merely for the convenience of the depositor or are otherwise subject to revocation at

the sole discretion of the depositor. See generally *Power of one party to joint bank account to terminate the interests of the other*, 161 ALR 71; see also *Mfr's Nat'l Bank of Detroit v Schirmer*, 303 Mich 598, 603; 6 NW2d 908 (1942); *Rasey v Currey's Estate*, 265 Mich 597, 601-602; 251 NW 784 (1933); *Sasanas v Mfr's Nat'l Bank of Detroit*, 130 Mich App 812, 818-819; 345 NW2d 621 (1983). Absent "competent evidence to the contrary," however, the creation of a joint account with the right of survivorship "actually fix[es] the ownership" of the account "in the persons named as joint tenants." *Jacques v Jacques*, 352 Mich 127, 136; 89 NW2d 451 (1958). This ownership remains joint between the parties until and unless there is a surviving party, in which case sole title vests in that survivor.

Based on the language in MCL 487.703, there are two facets of joint accounts often contested in disputes over such accounts. First, there is the right of survivorship, sometimes known as the "the poor man's will," involving whether a surviving joint tenant is vested with ownership of the whole account on the death of the other tenant. See, e.g., *Jacques*, 352 Mich at 134-135. Second, there is the question of contribution, ownership, access, and use of funds in the account while the joint tenants are still living. See, e.g., *Esling*, 278 Mich at 576; *In re Cullmann Estate*, 169 Mich App 778, 785; 426 NW2d 811 (1988). As developed in case law, although a joint account with the right of survivorship is neither a will nor a common-law *inter vivos* gift, the account can accomplish a testamentary disposition as well as share some aspects of a gift during the lifetime of the joint tenants. See *Jacques*, 352 Mich at 134-135. Yet, the account need not necessarily provide both a right of survivorship *and* an unlimited right to the funds during the lifetime of the account holders. See, e.g., *Kirilloff v Glinisty*, 375 Mich 586, 589; 134 NW2d 707 (1965); *Cullmann*, 169 Mich App at 785. For instance, a party establishing the account may create a right of survivorship applicable at death without gifting an interest in the funds during the party's lifetime. See *Kirilloff*, 375 Mich at 589; *Cullmann*, 169 Mich App at 785-787.

With respect to the second facet, the law presumes that joint tenants are equal contributors, have equal ownership shares, and have equal rights to access and use the funds. See *Danielson v Lazoski*, 209 Mich App 623, 625; 531 NW2d 799 (1995); MLP2d Estates § 44, at 117. The presumption can be rebutted, however, and this is a question of fact subject to clear-error review on appeal. *Danielson*, 209 Mich App at 629. "For the depositors themselves, the form [of the account] is not conclusive in any contest during their joint lives as to the title to the moneys, nor conclusive after the death of either as to moneys then withdrawn." *Esling*, 278 Mich at 577 (cleaned up). The "realities of ownership," not the form of the account, control in a dispute between parties to the joint tenancy. *Id*. The rights are determined by the intent of the depositor at the time of the deposit. *In re Pitre*, 202 Mich App 241, 244; 508 NW2d 140 (1993).

## C. RESPECTIVE *INTER VIVOS* RIGHTS OF THE PARTIES

Applying the law to the facts of this case, we first note that the question here is not whether Rosebrook lawfully received the funds as a survivor because Lewis predeceased her. Although Lewis is now deceased, the probate court did not conclude that Rosebrook was entitled to the funds as a survivor. The statutory presumption that a decedent intended funds in a joint account to become the sole property of the survivor arises "based on evidence that the decedent created and maintained the accounts until [his] death." *In re Estate of Soltys*, 497 Mich 908, 909; 856 NW2d 71 (2014); see also *Kettler v Security Nat'l Bank of Sioux City*, 805 NW2d 817, 823

(Iowa App, 2011) ("Essentially, the right of survivorship is dependent on both joint tenants continuing to agree to hold the property in that fashion.").[2]

Rosebrook transferred substantially all of the funds out of the three accounts while Lewis was still alive, and Lewis sued Rosebrook for return of the funds before he died. Indeed, during his deposition, Lewis testified that Rosebrook's actions were contrary to his ownership and use rights. Thus, this is not a survivorship dispute.

Instead, the probate court concluded that Rosebrook was entitled to substantially all of the funds during Lewis's lifetime. This is a dispute, in other words, about the respective *inter vivos* rights of parties to a financial account held as a joint tenancy with the right of survivorship under MCL 487.703.

Plaintiff maintained in the probate court, and continues to assert on appeal, that Lewis was the sole owner of the funds in the joint accounts and that Rosebrook did not have any ownership interest but was added to the accounts merely for Lewis's convenience, i.e., to assist him with the payment of bills. Disputes involving the "realities of ownership" among joint-account holders have often arisen in cases involving a joint account established purely for the convenience of the person who opened the account. For example, in *Hazen v Elmendorf*, our Supreme Court determined that the money in a joint account belonged solely to the person who opened the account and that the other persons named on the account—who had the power to withdraw as joint-account holders—could use the funds for the depositor's benefit, but they could not invest the withdrawn money in property for themselves. 365 Mich 624, 631-632; 113 NW2d 892 (1962). Likewise, in *Allstaedt v Ochs*, the Court determined that a father did not make a gift of funds in a joint account to his daughter when the evidence showed that the joint account was established for "emergencies," and the daughter could only withdraw funds with her father's permission. 302 Mich 232, 237; 4 NW2d 530 (1942).

In this case, the probate court concluded that Lewis did not establish the accounts for mere convenience, and our review of the record confirms that this factual finding was not clearly erroneous. Lewis admitted during his deposition that, when he set up the accounts, he intended to take care of Rosebrook financially. He was financially astute and business savvy, and he did not establish the accounts on short notice or a whim, but rather staggered over several years and well before he was diagnosed with an illness. Cf. *Jacques*, 352 Mich at 137 ("We have here an account established many years before death by a father completely mentally competent and during most of the succeeding years in good physical health."). Although Lewis funded the

---

[2] As Justice Markman has observed, any practical differences between a joint tenancy with right of survivorship and a standard joint tenancy (or even a tenancy by the entirety) largely collapse in the context of personal property, such as funds in a commercial bank account. The otherwise "indestructible contingent remainder" of the survivorship component in the typical joint tenancy with right of survivorship is essentially "nothing" if the account is depleted or closed. *Zavradinos v JTRB, Inc II, LLC*, 482 Mich 858, 879 n 4; 753 NW2d 60 (2008) (MARKMAN, J., dissenting).

accounts, the record confirms that the couple treated the funds as "our money," and Rosebrook had relatively free access to and use of the funds. Cf. *Allstaedt*, 302 Mich at 237. Considering the record and deferring to the probate court's credibility determinations, we conclude that the probate court did not clearly err in finding that Lewis did not establish the accounts for his own convenience but instead intended to convey a right in the funds to Rosebrook as a joint tenant with the right of survivorship under MCL 487.703.

With that said, the probate court did not conclude—and the record does not support—that Lewis intended to convey a 100% interest in the funds to Rosebrook or that he intended to divest himself of all ownership interest in the funds during his lifetime. Indeed, on this record it would be absurd to suggest that, by establishing joint accounts used to pay household expenses, Lewis intended to divest himself of all ownership interests during his own lifetime and to make an absolute transfer of all of the funds, to take immediate effect, to Rosebrook. See *Rasey*, 265 Mich at 601-602 (concluding that a joint account was not an "absolute transfer" when the depositor was not stripped of all "ownership of and dominion over the deposit").

Rather, the probate court concluded that the parties intended to vest title to the funds in both of them, even though it is undisputed that Lewis primarily, if not exclusively, funded the accounts. The probate court further concluded that the accounts were held and used equally by both parties. This latter factual finding accords with the presumption under state law that joint-account holders are equal owners of the funds. *Danielson*, 209 Mich App at 626. Given the record evidence, the probate court did not clearly err by concluding that Robert and Rosebrook were co-owners of the funds in the accounts and that they had equal access to and use of the funds. Cf. *Murphy v Michigan Trust Co*, 221 Mich 243, 246; 190 NW 698 (1922) (noting that the wife was "the principal contributor" to the married couple's joint account, and the wife should have been granted an interest in "one-half thereof").

### D. ROSEBROOK APPROPRIATED THE FUNDS WITHOUT REGARD TO LEWIS'S CO-OWNERSHIP RIGHTS

Plaintiff next argues that even if Rosebrook was a co-owner of the funds in the joint accounts, her right to access the funds did not grant her the separate and independent right to appropriate the entirety of the funds for her own use irrespective of Lewis's co-ownership rights. Plaintiff contends that Rosebrook as a co-owner was entitled to keep, at most, half of the funds.

Before we turn to the merits of this argument, Rosebrook asserts that plaintiff failed to preserve the claim below. The assertion is without merit. Although plaintiff did not specifically claim during the bench trial that the parties should each take "half" of the disputed funds, plaintiff did argue that Rosebrook was not entitled to 100% of the funds and, during closing arguments, plaintiff asked the probate court to consider whether Rosebrook should have to return a portion of the funds less than 100%. Moreover, plaintiff repeatedly argued that the right to withdraw was not commensurate with the right to retain. The probate court made a determination of the parties' respective ownership rights, concluding that title to the funds was vested in both, that they were joint owners, and that they enjoyed equal rights to access and use the funds; and yet, despite the co-ownership interests, the probate court ordered that Rosebrook had the right to retain 100% of the funds because she accessed the funds first. Thus, contrary to Rosebrook's assertions, the matter was raised before, addressed, and decided by the probate

court, and it has been preserved for our review. See *Hines v Volkswagen of America, Inc*, 265 Mich App 432, 443; 695 NW2d 84 (2005). In any event, on the facts of this case, we would overlook the preservation requirement and consider this question of law, for which the facts have been presented, to avoid manifest injustice and ensure a proper determination of the case. See *Smith v Foerster-Bolser Constr, Inc*, 269 Mich App 424, 427; 711 NW2d 421 (2006).

Turning to the merits, it is patently clear that Rosebrook had the right, under the statute as well as general principles governing joint tenancies, to access some or all of the funds in the accounts. As this Court has explained, MCL 487.703 permits a joint tenant to "withdraw the entire account." *Comerica Bank*, 201 Mich App at 325. Yet, the right to access is just one in the bundle of rights to funds in a joint account. See *Hazen*, 365 Mich at 631 (distinguishing a joint account holder's "authority to withdraw funds from the joint accounts" with the joint account holder's right to invest the money solely for her own gain without regard to the real ownership of the money); *Power of one party to joint bank account to terminate the interests of the other*, 161 ALR 71, § 1 (explaining that "the power to withdraw is one thing, the power or right to destroy cointerests another").

The record reflects that the parties had established a practice over the years that each party could access and use funds in the accounts without consulting the other party, at least with respect to all but the most costly expenses. The record further shows that some of the uses were for mutual expenses and some were for personal expenses. Yet, this tacit agreement to forgo prior consultation on particular expenses does not clearly encompass, or even remotely suggest, an additional agreement that one party could access and appropriate the entire corpus of the accounts for that party's own use, while the other, non-withdrawing party would disclaim any interest in the corpus. In other words, there is nothing in this record to suggest that Lewis and Rosebrook ever agreed, by word or deed, that one of the parties could transfer all of the funds out of the three accounts and appropriate those funds for that party's personal use without concern for the other party. Therefore, if Rosebrook had the right to appropriate the entire corpus for her own use without regard to Lewis as a co-owner of the joint tenancy, then this right would have to exist by operation of statute or common law rather than by any established agreement of the parties.

We look first to the statute. With regard to the express language in MCL 487.703, it is clear that the Legislature intended to provide a liability shield to banking institutions with respect to withdrawals from this type of account. Specifically, the statute provides that the withdrawal payment "shall be a valid and sufficient release and discharge to said banking institution for all payments made," absent written notice halting any withdrawals. MCL 487.703; see also *Esling*, 278 Mich at 577-578.

The statute does also provide that payment may be made to any of the co-owners. Yet, there is nothing in the statute to suggest that, similar to the banking institution that makes payment, the withdrawing co-owner is released and discharged from any liability to the non-withdrawing co-owner related to that payment. Put differently, nothing in the statute indicates that a banking institution's payment of funds to one co-owner divests the other then-living co-owner of rights in the funds or otherwise vests property exclusively in the withdrawing co-owner without regard to the realities of ownership. See *Esling*, 278 Mich at 577-578. Had the Legislature intended to provide a shield from liability for co-owners as it did for banking

institutions, it could have done so easily by adding language to that effect. It did not, and we will not read into the statute something that the Legislature did not see fit to include. See *D'Agostini Land Co, LLC v Dep't of Treasury*, 322 Mich App 545, 561; 912 NW2d 593 (2018).

Similarly, we are unaware, and Rosebrook has not pointed to anything, in Michigan's common law to support the proposition that a co-tenant of a joint financial account with right of survivorship can appropriate the entire corpus of the tenancy without regard to, and, in fact, in direction contravention of, the ownership interest of the other co-tenant. As explained by the editors of the American Law Reports, "Ordinarily, once it is admitted or established that both parties have substantial interests in the account, it follows that neither can appropriate the whole without liability" to the other. *Power of one party to joint bank account to terminate the interests of the other*, 161 ALR 71, § 1. There are generally only two circumstances in which a party can appropriate the entire corpus without liability to the other, neither of which applies here: "(1) where in fact and in law the appropriator is the real owner of the money; and (2) where the interests acquired by the other are by implication or express contract subject to destruction—as, for example, in case a reserved power to revoke the gift of a joint interest." *Id.* This appears to be the majority position outside of this jurisdiction. See, e.g., *Kettler*, 805 NW2d at 825; *Rollings v Smith*, 716 NE2d 502, 506 (Ind App, 1999); *Dent v Wright*, 322 Ark 256, 262-263; 909 SW2d 302 (1995); *Johnson-Batchelor v Hawkins*, 450 NW2d 240, 241 (SD, 1990).

A minority of other jurisdictions treat the matter somewhat differently. For example, in *In re Rauh*, the federal bankruptcy court applied Massachusetts law and held that a "joint owner of a bank account . . . has the right to withdraw all of the funds, thereby totally divesting the other joint owner of all interest" in the funds. 164 BR 419, 424 (Bankr D Mass, 1994) (citing *Heffernan v Wollaston Credit Union*, 30 Mass App 171; 567 NE2d 933 (1991)). In support of this position, these minority jurisdictions appear to rely in part on the distinction between a joint tenancy in real property versus a joint tenancy in a financial account, see, e.g., *Heffernan*, 30 Mass App at 177-178, where in the latter the unilateral right to withdraw is found in statute and the funds that make up the corpus are, as all legal tender is, wholly fungible, thereby defeating any action to return the precise property taken. Yet, even in several of these minority jurisdictions, it is recognized that the other joint owner is not without legal recourse. As the bankruptcy court in *In re Rauh* observed, "It may be that the creator of a joint account has a cause of action against the other owner for having completely withdrawn the funds, upon establishing that in creating the account the creator did not intend to transfer that measure of beneficial enjoyment." 164 BR at 424.

Michigan has long adhered to the rule that, in a dispute involving a joint account, the "realities of ownership" control "as to the title to the moneys," *Esling*, 278 Mich at 577-578, and the "actual property rights of the respective parties" are "open to adjudication," *Schirmer*, 303 Mich at 603. Prior cases have recognized that a depositor may, under certain circumstances, withdraw all of the funds and revoke a joint account during the depositor's lifetime. See *id.* at 603-604; *Meigs v Thayer*, 289 Mich 680, 683; 287 NW 342 (1939); *Esling*, 278 Mich at 576; *Pitre*, 202 Mich App at 244. Yet, these cases do not lend any support to Rosebrook, as she was not the depositor and, more importantly, these and other cases consistently point out that it is the realities of ownership that govern the respective rights of the parties to a particular joint account. Here, although Lewis was the depositor of all three accounts, the record confirms that the parties intended that they be equal owners of the funds with equal rights to access and use the funds.

And yet, the mere act of accessing the funds by one co-owner does not destroy all of the rights of the other co-owner. When a co-owner withdraws funds from the account, "the payment in such case is made to the joint owner *qua* joint owner." *LaValley v Pere Marquette Employes' Credit Union*, 342 Mich 639, 643; 70 NW2d 798 (1955) (emphasis added); cf. *Hazen*, 365 Mich at 631-632; *Woodington v Shokoohi*, 288 Mich App 352, 367-368; 792 NW2d 63 (2010) (recognizing, in the context of a divorce, that one spouse cannot dissipate funds from a joint account without explanation); *Comerica Bank*, 201 Mich App at 329 (recognizing that seizure of funds from a joint account by the Department of Treasury did not constitute "a final determination of rights to the property involved" and that the actual ownership rights of the account holders remained open to adjudication). In the past, when Lewis or Rosebrook withdrew funds from the accounts to pay expenses, they did so in their capacities as co-owners. Given that there has not been a prior lawsuit over these accounts, presumably the withdrawals and payments by one co-owner met the then-current expectations of the other co-owner. When Rosebrook transferred substantially all of the funds from the three accounts in early 2017, she was required to do so in her capacity as—"*qua*"—a co-owner. But, as Lewis and his daughter quickly made clear, the transfers were not done with Lewis's authority or acquiescence.

The probate court relied critically on the fact that Lewis did not provide prior written notice to the banking institutions to block future withdrawals. While doing so may have been advisable in retrospect, the lack of written notice did not somehow dissolve Lewis's co-ownership interests in the funds. Moreover, our Supreme Court has recognized that the realities of the parties' intentions and actions should control with regard to these types of accounts as long as they do not conflict with the express language of the statute. See, e.g., *Roach v Plank*, 300 Mich 43, 53; 1 NW2d 446 (1942); *Esling*, 278 Mich at 580; *Equitable & Central Trust Co v Zdziebko*, 260 Mich 366, 373; 244 NW 505, 507 (1932); *State Savings Bank of Carleton v Baker*, 257 Mich 666, 669-670; 241 NW 842 (1932); *In re Taylor's Estate*, 213 Mich 497, 502-503; 182 NW 101 (1921).

Accordingly, although the probate court correctly recognized that Rosebrook had the right to withdraw all of the funds in the three accounts, the probate court erred by conflating the right to withdraw with the right to retain and use the funds for her own benefit despite Lewis's co-ownership rights. The parties had undivided interests in all three accounts, but each party's proportional share could be determined. Because Rosebrook was an equal owner but she appropriated substantially all of the funds in early 2017, she is liable under a conversion theory to return the funds taken in excess of her 50% proportional share. We therefore reverse the probate court to the extent that it concluded that Rosebrook could retain 100% of the funds, vacate the judgment on plaintiff's conversion claim, and remand for a determination of the monetary value of Lewis's share as well as any other applicable damages.

E. PLAINTIFF'S REMAINING CLAIMS

Plaintiff raised several additional claims of error. The probate court rejected plaintiff's claims of breach of fiduciary duty and constructive trust, reasoning erroneously that Rosebrook was entitled to retain substantially all of the funds in the joint accounts. Because we reverse the probate court with respect to Rosebrook's entitlement to retain the funds, we likewise vacate its rulings with regard to the breach of fiduciary duty and constructive trust. We emphasize,

however, that we do not reach the merits of either of these claims and, on remand, the probate court might again conclude that the claims lack merit.

Plaintiff has also asserted a claim that the parties created an oral trust. In rejecting this claim, the probate court did not err. "It is a general principle of trust law that a trust is created only if the settlor manifests an intention to create a trust, and it is essential that there be an explicit declaration of trust accompanied by a transfer of property to one for the benefit of another." *Osius v Dingell*, 375 Mich 605, 613; 134 NW2d 657 (1965). Plaintiff argues that Lewis created a trust by opening the accounts for his own convenience and allowing Rosebrook access as a trustee for his benefit. As already explained, the probate court did not clearly err in rejecting the convenience theory posited by plaintiff, and given this, plaintiff's original oral-trust claim fails.

For the first time on appeal, plaintiff proffers another oral-trust theory—Lewis created an oral trust when, following the end of their relationship, the parties agreed to wait 30 days to sort out their assets and separate their accounts. This issue is unpreserved and need not be considered and, in any event, is without support in fact or law. See *Smith*, 269 Mich App at 427.

## III. CONCLUSION

While living and in the absence of sufficient evidence to the contrary, parties to a joint banking account with the right of survivorship hold their interests as co-owners and must act consistent with that co-ownership. Rosebrook seized substantially all of the funds from the parties' three accounts and appropriated the funds for her own personal use, in contravention of the realities of her co-ownership with Lewis. For the reasons previously stated, the probate court erred as a matter of law when it held that Rosebrook could lawfully retain and use the funds.

Accordingly, we reverse the probate court with respect to this holding, vacate the judgment on plaintiff's claims of conversion, breach of fiduciary duty, and constructive trust, and remand the matter to the probate court for consideration of those claims consistent with this opinion. In all other respects we affirm the decision of the probate court. We do not retain jurisdiction.

Appellant, as prevailing party, is entitled to tax costs under MCR 7.219(F).

/s/ Brock A. Swartzle
/s/ Michael J. Kelly
/s/ Jonathan Tukel