*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ARTHUR ORMONDE PRICE, JR.,

        Plaintiff-Appellant,

v

SAMUEL ONEAL AUSTIN and L & B CARTAGE,
INC., doing business as OMNI QUALITY
INSPECTION SERVICES,

        Defendants-Appellees.

UNPUBLISHED
April 30, 2020

No. 346145
Saginaw Circuit Court
LC No. 17-032666-NI

Before: O'BRIEN, P.J., and JANSEN and GLEICHER, JJ.

GLEICHER, J. (*dissenting*).

This automobile negligence case arises from a head-on collision between a semi-truck driven by defendant Samuel Austin and plaintiff Arthur Price's Buick. Austin claims that while driving down a straight stretch of two-lane highway, he suddenly began coughing, blacked out, crossed the center line, and struck Price's car. The investigating officer observed no preaccident skid marks attributable to Austin's truck.

The majority affirms summary disposition in favor of Austin on the basis of "the sudden emergency doctrine." In so holding, the majority commits two grave legal errors: it decides that defendant's testimony must be believed, and it misapprehends the function of the sudden emergency defense. I respectfully dissent.

## I. GOVERNING LEGAL PRINCIPLES

In every automobile negligence case, the plaintiff must prove that the defendant was negligent. When a defendant's violation of a statute causes an injury, the law bolsters the plaintiff's case by supplying a rebuttable *presumption* that the defendant was negligent. The presumption relieves the plaintiff of the burden of presenting positive evidence of negligence beyond the statutory violation. The defendant is tasked with rebutting the legal conclusion (here, negligence) embedded within the presumption. See *Widmayer v Leonard*, 422 Mich 280, 289-290; 373 NW2d 538 (1985). "If rebuttal evidence is introduced, the presumption dissolves, but

1

the underlying inferences remain to be considered by the jury[.]" *Ward v Consol Rail Corp*, 472 Mich 77, 84; 693 NW2d 366 (2005). In other words, the inference (here, an inference of negligence arising from Austin's crossing of the center line) maintains evidentiary power. What was once a presumption of negligence becomes an inference of common-law negligence. "[E]ven though facts might be introduced tending to controvert the presumed fact, the presumed fact nonetheless remains as at least a permissible inference for the trier of fact." *Kirilloff v Glinisty*, 375 Mich 586, 588; 134 NW2d 707 (1965).

MCL 257.634(1) requires drivers to operate their vehicles on the right side of the road. A violation of this statute creates a rebuttable presumption of negligence. Accordingly, Price could establish Austin's negligence based solely on the fact that Austin's truck crossed the center line. Austin was entitled to rebut this presumption of his negligence with evidence of an excuse for his negligence; he did so with his sudden emergency claim. *White v Taylor Distrib Co*, 275 Mich App 615, 621; 739 NW2d 132 (2007) (*White I*). Austin alleged that while driving down the road, he had "a really bad coughing spell," "tr[ied] to hit the brakes and . . . get over to the right," but "passed out." He additionally asserted that he unsuccessfully "tried to slow down." This testimony would suffice to rebut the presumption of negligence accompanying Austin's crossing of the center line—if and only if the jury believes it. And contrary to the majority's analysis, even if the *presumption* is successfully rebutted, an inference of negligence remains to be considered by the trier of fact.

## II. A JURY MAY DISBELIEVE ANY WITNESS'S TESTIMONY

A critical error permeates the majority opinion. In considering a motion brought under MCR 2.116(C)(10), neither we nor the circuit court may weigh evidence or find facts. The majority does both. By deciding that Austin's coughing story is credible, the majority usurps the province of the jury, substituting two judges in the jury's place.

A bedrock legal principle instructs that "the jury is free to credit or discredit *any* testimony." *Kelly v Builders Square, Inc*, 465 Mich 29, 39; 632 NW2d 912 (2001) (emphasis added). This is a very old rule. More than a century ago, the United States Supreme Court explained the underlying concept:

> The jury were the judges of the credibility of the witnesses . . ., and in weighing their testimony had the right to determine how much dependence was to be placed upon it. There are many things sometimes in the conduct of a witness upon the stand, and sometimes in the mode in which his answers are drawn from him through the questioning of counsel, by which a jury are to be guided in determining the weight and credibility of his testimony. That part of every case . . . belongs to the jury, who are presumed to be fitted for it by their natural intelligence and their practical knowledge of men and the ways of men; and so long as we have jury trials they should not be disturbed in their possession of it, except in a case of manifest and extreme abuse of their function. [*Aetna Life Ins Co v Ward*, 140 US 76, 88; 11 S Ct 720; 35 L Ed 371 (1891).]

Michigan's jurisprudence hews to the same legal philosophy. Indeed, a decade before the United States Supreme decided the above-quoted case, our own Justice COOLEY articulated the

identical rule. In *Woodin v Durfee*, 46 Mich 424, 427; 9 NW 457 (1881), the Supreme Court reversed a directed verdict resting on "undisputed" evidence that "probably ought to have satisfied any one . . . ." Justice COOLEY explained that a jury "may disbelieve the most positive evidence, even when it stands uncontradicted; and the judge cannot take from them their right of judgment." *Id*.

Our Supreme Court reiterated this point in *Yonkus v McKay*, 186 Mich 203, 210-211, 152 NW 1031 (1915):

> To hold that in all cases when a witness swears to a certain fact the court must instruct the jury to accept that statement as proven, would be to establish a dangerous rule. Witnesses sometimes are mistaken and sometimes unfortunately are wilfully mendacious. The administration of justice does not require the establishment of a rule which compels the jury to accept as absolute verity every uncontradicted statement a witness may make.

In *Cuttle v Concordia Mut Fire Ins Co*, 295 Mich 514, 519; 295 NW 246 (1940), the Supreme Court again acknowledged that "[u]ncontradicted testimony may be disentitled to conclusiveness because, from lapse of time or other circumstances, it may be inferred that the memory of the witness is imperfect as to the facts to which he testified, or that he recollects what he professes to have forgotten." *Id*.

These principles apply equally to defense witnesses. For example, in *Strach v St John Hosp Corp*, 160 Mich App 251, 271; 408 NW2d 441 (1987) (citation omitted), a medical malpractice case, this Court declared that a jury could disregard a physician's unrebutted testimony, reasoning that "a jury may disbelieve the most positive evidence even when it stands uncontradicted, and the judge cannot take from them their right of judgment." Two additional medical malpractice cases make the same point. In *Ykimoff v WA Foote Mem Hosp*, 285 Mich App 80, 89-90; 776 NW2d 114 (2009), and *Martin v Ledingham*, 488 Mich 987, 987-988; 791 NW2d 122 (2010), the defendant physicians testified that they would have acted in a certain manner if provided with information about a patient's condition. Both appellate courts held that a jury was entitled to disbelieve the physicians' testimony, even though it was unrebutted by other evidence. The Supreme Court stated in *Martin*, 488 Mich at 988: "the treating physician's averment that he would have acted in a manner contrary to this standard of care presents a question of fact and an issue of credibility for the jury to resolve." See also *Debano-Griffin v Lake Co*, 493 Mich 167; 828 NW2d 634 (2013); *Soule v Grimshaw* 266 Mich 117; 253 NW 237 (1934); *Ricketts v Froehlich*, 218 Mich 459; 188 NW 426 (1922).

Even the credibility of eyewitness testimony presents a question of fact. *Estate of Taylor by Taylor v Univ Physician Group*, ___ Mich App ___; ___ NW2d ___ (2019) (Docket No. 338801), slip op at 6. See also *Arndt v Grayewski*, 279 Mich 224, 231; 271 NW 740 (1937) (holding that eyewitness testimony "is not conclusive upon the court or a jury if the facts and circumstances of the case are such as irresistibly lead the mind to a different conclusion").

Several of the cases discussed above arose in the summary disposition context. The same rule applies: when the resolution of a case depends solely on a witness's credibility, summary disposition is inappropriate because a jury question necessarily exists. An appellate court may not

assess credibility or make factual findings when reviewing the propriety of summary disposition. *White v Taylor Distrib Co*, 482 Mich 136, 142-143; 753 NW2d 591 (2008) (*White II*). Furthermore, summary disposition is improper when a trier of fact could reasonably draw an *inference* in the plaintiff's favor:

> It is a basic proposition of law that determination of disputed issues of fact is peculiarly the jury's province. Even where the evidentiary facts are undisputed, it is improper to decide the matter as one of law if a jury could draw conflicting inferences from the evidentiary facts and thereby reach differing conclusions as to ultimate facts. [*Nichol v Billot*, 406 Mich 284, 301-302; 279 NW2d 761 (1979) (citations omitted).]

In this case, the majority's holding rests entirely on its determination that Austin's account of what happened is credible, despite that there were no confirming witnesses. Austin's claim that he coughed, became light-headed, and almost instantly passed out is contradicted by the accident report, which notes that Austin informed the officer that the coughing "may have caused him to pass out." Austin claimed at his deposition that when he began coughing he "tr[ied] to hit the brakes and . . . get over to the right," but none of the physical evidence described by the officer supports that he did either of those things. Austin's medical records contain yet another description of what happened; a physician noted that he experienced "twinging of chest, feeling like he needed to cough. He was bearing down and had a syncopal episode." This recounting did not include the violent coughing that Austin testified to at his deposition. Such inconsistencies matter; in *White II*, 482 Mich at 142, the Supreme Court highlighted that "[d]efendant's inconsistent statements about the cause of his illness create issues of material fact precluding summary disposition."

Are the discrepancies in this case relatively minor? Yes. But they demonstrate that Austin's deposition version of what happened may well have been exaggerated, the coughing magnified, and the efforts to avoid the crash over stated.[1] As the Supreme Court pointed out in *White II*, "if defendant felt ill even a few minutes before he collided with plaintiff, then the emergency may well have been of his own making." *Id*. Ultimately, it is the jury's job to assess whether Austin's story rings true, not this Court's. As this Court has said time and time again, the jury sees, hears, and observes witnesses as they testify, determining whom to believe and who is unworthy of belief. On this ground alone, I would reverse the trial court's grant of summary disposition.

### III. THE SUDDEN EMERGENCY

The majority's next error arises from its interpretation and application of the sudden emergency doctrine. Simply by testifying that he suffered a syncopal episode, the majority holds, Austin "was entitled to rebut the presumption of negligence as a matter of law." The majority reasons that Austin is entitled to avoid a trial based on Price's failure to "identify anything in the

---

[1] The majority construes the physical evidence as supporting Austin's story. The majority ignores that the physical evidence would also support that Austin fell asleep at the wheel or was distracted and lost control of his truck. Both of these potential accident causes are far more common than an unexpected coughing fit leading to a black-out.

-4-

existing record, or to offer any new evidence," to show that Austin "could have done anything differently to avoid the accident." The majority misapprehends the function and purpose of the sudden emergency doctrine.

The doctrine of sudden emergency is merely one application of the reasonably prudent person standard; it is not an affirmative defense. *Szymborski v Slatina*, 386 Mich 339, 341; 192 NW2d 213 (1971); *Baker v Alt*, 374 Mich 492, 496; 132 NW2d 614 (1965). An affirmative defense accepts that the plaintiff has established a prima facie case, but seeks to foreclose relief for reasons unrelated to the plaintiff's proofs. See *Campbell v St John Hosp*, 434 Mich 608, 616; 455 NW2d 695 (1990). Most affirmative defenses offer the defendant the possibility of a full victory, even if everything the plaintiff claims is true—think of the statute of limitations, release, and immunity granted by law. See MCR 2.111(F)(3).

I repeat and emphasize: sudden emergency is *not* an affirmative defense. It is merely a denial of negligence that, if believed by a jury, operates to rebut a presumption of negligence or to provide an excuse for what would otherwise be negligent conduct. Not every case involving the sudden emergency doctrine implicates a presumption of negligence. When there is no presumption to rebut, the sudden emergency doctrine merely offers a garden-variety defense. As with every defense to a negligence claim, the jury applies an objective standard: did the defendant behave reasonably under the circumstances? The defendant's *opinion* that he behaved reasonably is not determinative, nor is a judge's concurring view. A jury may find a defendant negligent notwithstanding the defendant's sudden emergency claim.

Similarly, when invoked to rebut a presumption of negligence, the sudden emergency doctrine is not a free ticket to summary disposition. Rather, it continues to serve as a factual circumstance relevant to determining whether the defendant acted reasonably. In other words, when a presumption of negligence falls away, the jury must still determine whether the defendant's acts were consistent with the standard of care expected under the circumstances. See *Baker*, 374 Mich at 496 ("In actuality, the doctrine of 'sudden emergency' is nothing but a logical extension of the 'reasonably prudent person' rule. The jury is instructed, as was done here, that the test to be applied is what that hypothetical, reasonably prudent person would have done under all the circumstances of the accident, whatever they were."); *Martin v City of New Orleans*, 678 F2d 1321, 1325 (CA 5, 1982) ("The doctrine of sudden emergency does not invoke a different standard of care than that applied in any other negligence case. The conduct required is still that of a reasonable person under the circumstances. The emergency is merely a circumstance to be considered in assessing the actor's conduct.").[2]

Restatement Torts, 3d, § 9, summarizes the sudden emergency doctrine as follows: "If an actor is confronted with an unexpected emergency requiring rapid response, this is a circumstance to be taken into account in determining whether the actor's resulting conduct is that of the reasonably careful person." Michigan law is entirely consistent with this approach. Despite that Austin claims to have experienced a sudden emergency, he crossed the center line and failed to

---

[2] A number of courts have eliminated the sudden emergency doctrine from their common-law toolbox precisely because it is frequently misused. See *Bedor v Johnson*, 292 P3d 924 (Colo, 2013), and the cases collected in footnote 2.

apply his brakes.  Did he really have a coughing fit that caused him to pass out?  If so, did he act prudently when he began coughing?  I don't know, and neither does the majority.  I do know that Austin's negligence under the circumstances remains a salient question, and that only a jury is empowered to answer it.  Contrary to the majority's view, evidence that Austin was confronted with a sudden emergency does not entitle him to a legal determination that he lacked any fault for the accident.  I would reverse the lower court and remand for a jury trial.


/s/ Elizabeth L. Gleicher